[Crim. No. 15976. Second Dist., Div. Five. Mar. 27, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS GASTON RICHARDSON, Defendant and Appellant.

## COUNSEL

Charles E. Lloyd, under appointment by the Court of Appeal, and Lloyd, Bradley, Burrell & Nelson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon J. Rose, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—By information defendant was charged with violations of Health and Safety Code, section 11500 (count I—possession of heroin) and section 11501 (count II—transporting a narcotic). A motion to set aside the information under Penal Code section 995 was denied, and two motions to suppress evidence under Penal Code section 1538.5 were denied. By stipulation the case was tried before the court on the transcript of the preliminary hearing.[1] During the trial another motion to suppress was made and denied.[2] Defendant was sentenced on both counts to the state prison for the term prescribed by law. The appeal is from the judgment of conviction, and purportedly from the order denying motion for new trial.

Officer Welsch, of the Narcotics Division of the Los Angeles Police Department, over the past five years had known defendant (under his middle name "Gaston") as a seller of narcotics.[3] Officer Welsch received information from an informant, with whom he had just become acquainted, that defendant and two others were involved in criminal activity. As to the latter, one was said to be selling narcotics; the other to be in possession of stolen property.

As to defendant, the informant gave Officer Welsch defendant's address and telephone number, advised that he was known as "Gaston" and had an off-white 1963 Chevrolet automobile with a dented right rear door, and identified him in a photograph. He stated to Officer Welsch that defendant was engaged in the sale of heroin; that defendant would leave his house between 6 a.m. and 8 a.m. to make deliveries; that if defendant did not have sufficient heroin, he would go to a large brown building with green trim at 42d and San Pedro Place to obtain an additional supply.

---

[1]There is an indication that it was also tried on the transcript of one of the 1538.5 motions. However, that transcript was not brought to us as part of the record.

[2]The trial judge seemed to consider that this motion was not pursuant to section 1538.5 but under the court's inherent power. Although the distinction, in this case at least, is not significant, the in-trial motion no doubt was under the sanction of section 1538.5. The section reads that "proceedings provided for in this section, Section 995, Section 1238 and Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure" where the movant is a defendant and the property will be offered as evidence against him, and that "the court in its discretion may entertain the motion during the course of trial." This discretion is to be exercised sparingly and under narrowly drawn conditions. (See *People* v. *O'Brien*, 71 Cal.2d 394, 402-404 [78 Cal.Rptr. 202, 455 P.2d 138, 456 P.2d 969].)

[3]No defense motion was made to strike the officer's cryptic testimony to this effect, and no cross-examination was indulged in to ascertain how Officer Welsch obtained this knowledge. Therefore, the fact that he had it was part of the probable cause evidence available to the trial court.

Two days before he made contact with defendant, Officer Welsch arrested the other two persons who had been informed upon and learned that the information about them had been accurate. The validity of these arrests was not attacked by defendant. One arrestee had possession of three-fourths of an ounce of heroin; the other, 30 admittedly stolen Cashmere coats.

Officer Welsch verified the address and telephone number given by the informant as those of defendant. At 7 a.m. of the day chosen to check on defendant, Officer Welsch, in an unmarked car driven by Sergeant Sanderson, went to defendant's residence. Officer Welsch saw defendant enter an off-white 1963 Chevrolet with a dented right rear door and drive away. The officers followed defendant to the location on San Pedro Place specified by the informant and saw defendant stop, enter a large brown house with green trim, come out, reenter his automobile and drive away. The officers continued to follow, and after a short distance, pulled alongside defendant. Officer Welsch, from the passenger's side, identified himself as a policeman and had defendant stop. Defendant remained in his car. When Officer Welsch got out and approached defendant's car, he observed defendant make a quick movement with his right arm away from his body, either downward or upward, or both. Officer Welsch had defendant step from his vehicle and then asked him if he minded if they searched his car. Defendant said, "No, you don't have to ask me. Go ahead. Go right ahead."[4]

Officer Welsch looked on the floor boards under the driver's section and found two balloons containing a powdery substance which he considered to be, and which later proved to be, heroin. Defendant then was formally arrested. Shortly thereafter, following full advice as to his rights and his statement that he understood them, and would answer questions, defendant, when queried about his use of heroin, said, "Well, I horn a little bit" (meaning he ingested it by sniffing it through his nose).

### CONTENTIONS

Defendant makes two main contentions. The first is in two segments: (1) that the evidence is insufficient to establish that Officer Welsch had probable cause to arrest defendant and to make a prior search of his car incident to the later arrest; and (2) that if there were proper grounds for an investigative detention of defendant, the evidence was insufficient to establish that defendant, in the course of that detention, consented to the

---

[4]The quotation is from the testimony of Officer Welsch. When defendant took the stand, he testified that he was asked if he had any heroin on him and that he replied, "Look in the car and see, I ain't got nothing on me no how." Later, defendant testified he had not consented to a search.

search. The second main contention is that there was insufficient evidence to support the implied finding that defendant had knowledge of the presence of the heroin and of its narcotic character.

## DISCUSSION

### I.

It is clear from the remarks of the trial judge, made when denying the motion for new trial, that he did find that the informant was reliable. This was supported by the testimony that the information concerning the other two persons informed upon turned out to be accurate. This is the conventional measuring device for reliability. (*McCray* v. *Illinois,* 386 U.S. 300, 303 [18 L.Ed.2d 62, 66, 87 S.Ct. 1056]; *People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *People* v. *Sanders,* 250 Cal.App.2d 123, 130 [58 Cal.Rptr. 259].) The mere fact that confirmation of informer reliability materialized only a few days before the information given as to defendant was acted upon should not detract from its value.

The defendant appears to urge, however, that granted the informant was reliable, his explanation to the officers gave only a *modus operandi* for criminal activities and did not purport to recount actual occurrences seen by the informant. However, a strong inference was available from the nature and detail of the explanation that it was based on observations of numerous instances of the procedure. Moreover, it is not essential that the informant's material be obtained from firsthand observation, if he gives an adequate explanation of the manner in which the information was gathered or if he describes the criminal activity in considerable detail, and the details are corroborated by police investigation so that the tip appears as trustworthy to a magistrate as a tip passing the test of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], without independent corroboration. (*Spinelli* v. *United States,* 393 U.S. 410, 415 [21 L.Ed.2d 637, 643, 89 S.Ct. 584].) *Spinelli* says that its facts did not meet this standard. The tip was that Spinelli was using two specified telephone numbers for a gambling operation. Investigation revealed that an apartment that Spinelli was seen entering contained the two telephones which had these numbers. *Spinelli* points out though that the circumstances in *Draper* v. *United States,* 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329], were adequate. There the tip related that Draper had gone to Chicago and would return with heroin to Denver by train on one of two specified mornings and gave a description of his clothing. The officers saw the man in question at the train on the second morning specified with attire which corresponded to the description. It is clear that the circumstances in the instant case are much closer to those in *Draper* than to those in *Spinelli*. Details were given con-

cerning times, locations and the vehicle being used, and what the officers saw matched quite precisely with the information received. The informant's statement in the instant case did "describe the accused's criminal activity in sufficient detail that the . . . [officer might] know that he . . . [was] relying on something more substantial than a casual rumor circulating in the underworld : . . ." (*Spinelli* v. *United States, supra,* at p. 416 [21 L.Ed.2d at p. 644].) The detail which the informer provided, corroborated in every respect by the officer's observations, indicated that the informer had an intimate familiarity with the activities of defendant and that he gained his information in a reliable way.[5] ▇ Officer Welsch's awareness over a five-year period of defendant's selling habits made the informant's tip particularly meaningful. This factual situation should be contrasted with what we pointed out in *People* v. *Escollias,* 264 Cal.App.2d 16, 19-20 [70 Cal.Rptr. 65], to be a situation "totally devoid of anything that would indicate any criminal activity was involved."

When he observed defendant go into and come out of the big brown house with the green trim and return to his car and drive off, Officer Welsch, based on the informant's revelation that defendant did this to obtain heroin for his projected deliveries, had reason to entertain a strong suspicion that defendant possessed heroin in the vehicle. Officer Welsch's observation of defendant furtively moving his right arm at the time he was being stopped, was confirmatory of the presence of contraband. The totality of this information gave Officer Welsch probable cause to arrest defendant. (Cf. *Draper* v. *United States, supra,* 358 U.S. 307, 312-314 [3 L.Ed.2d 327, 331-332]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; see Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 103, pp. 102-103.)

▇ With probable cause to arrest, the officer had the right, coincidentally, even though preceding formal arrest (*People* v. *Terry,* 70 Cal.2d 410,

---

[5] We recognize that the statement that defendant was selling heroin was conclusional and that the descriptive information provided by the informer could be consistent with innocent activity as much as with criminal conduct. But it appears that under *Draper* v. *United States, supra,* 358 U.S. 307, as approved (but then distinguished) in *Spinelli* v. *United States, supra,* 393 U.S. 410, 417 [21 L.Ed.2d 637, 644], an officer or magistrate is entitled to infer that such sufficiently detailed and corroborated circumstances were gained by the informer in a reliable way and that therefore his attribution of criminal conduct is well founded. (See *Spinelli* v. *United States, supra,* at pp. 417-418 [21 L.Ed.2d at pp. 644-645].) This should be compared with the situation in *People* v. *Hamilton,* 71 Cal.2d 176, 181-182 [77 Cal.Rptr. 785, 454 P.2d 681], where the informant provided a description of *obviously criminal* activities, none of which, however, could be corroborated by the police. Our Supreme Court leaves open the possibility that such information, if given in sufficient detail and even without police corroboration, may support an inference of the informer's personal knowledge.

428 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Cockrell,* 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116]),[6] to search the front seat of the car. (See *People* v. *Bauer,* 1 Cal.3d 368, 374-375 [82 Cal.Rptr. 357, 461 P.2d 637].)[7]

Defendant suggests that whatever probable cause to arrest may have existed in law, Officer Welsch himself did not believe that he had such probable cause at the time he made the search. This argument envisions the rule that it is not an objective, but a personally subjective, probable cause standard which is to be used in deciding whether a pre-formal-arrest search is valid. The objective test is proper. (Cf. *People* v. *Reyes,* 206 Cal.App.2d 337, 340, 343 [23 Cal.Rptr. 705]; see also *Klingler* v. *United States* (8th Cir. 1969) 409 F.2d 299, 304.) In any event, the evidence indicates that Officer Welsch did believe he had probable cause to arrest by the time he searched the car. It is true that Officer Welsch, referring to the time of receipt of factual material from the informant, intimated that he did not feel he had cause to arrest defendant because he did not have any evidence; but he also testified that tieing in with his own knowledge of defendant what the informer told him, he was "pretty well convinced that . . . [defendant] was involved in the crime of selling narcotics, . . ." Moreover, Officer Welsch, as his actual investigation progressed, obtained the "evidence" of defendant's visit to the brown house and of his furtive movement when his car was stopped. It is also true that Officer Welsch testified that when defendant got out of his car he was "under investigation." However, the trial court could have taken this to mean that defendant had not been formally arrested yet, and not to mean that Officer Welsch felt that he did not yet have probable cause to arrest despite his observation of defendant's visit to the brown house (supportive of a belief that he got heroin there) and his furtive movement in the car (supportive of a belief that he was attempting to conceal heroin). Finally, Officer Welsch testified that if defendant had not given him consent to search, he would have searched anyway, an attitude indicative of a belief that probable cause to arrest existed. The evidence was adequate for the trial judge to make a finding to that effect.

Defendant has cited the case of *Hood* v. *Superior Court,* 220 Cal.App.2d 242 [33 Cal.Rptr. 782] in support of his contention that there is insufficient evidence to support a finding of probable cause to arrest and so to legitimize a warrantless search. *Hood* is not sufficiently comparable to the instant

---

[6]It is probable that defendant technically was under arrest when he was stopped and asked to step out of his car. Officer Welsch testified that if defendant had tried to leave, he would not have let him.

[7]The search in the instant case occurred October 16, 1967, well before the date of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

case to carry any persuasive effect; there was no reliance on the informant, whose reliability the prosecution never sought to establish.

Because we conclude that there was probable cause to arrest and so to search, we do not reach the aspect of defendant's first contention segment involving mere detention and receipt of consent to search.[8]

## II.

■ The issue of knowledge is resolved by the circumstance that the heroin was in the car which defendant was driving, was found adjacent to the driver's location, and, inferentially, was placed there by defendant in the course of his furtive movement, and by the admission of defendant that he used heroin through the process of sniffing it through his nose. These circumstances, when taken together, are strongly supportive of a factual conclusion that defendant knew of the presence of the illicit substance in his automobile. (Cf. *People* v. *Mermuys,* 2 Cal.App.3d 1083, 1088, et seq. [82 Cal.Rptr. 902].)

## III.

■ One point remains to be considered which was not dealt with by either party, but which we feel each side will concede should be taken

[8]As a matter of interest, our analysis indicates that there was consent and that the trial judge ultimately so found. Officer Welsch testified that defendant gave his consent to a search of the car. Defendant at first agreed with that. Nevertheless, defendant urges that the trial judge stated that he was not deciding the question whether defendant had given consent. A comment along these lines was made by the trial judge in connection with the in-trial motion to suppress. However, when ruling on defendant's motion for new trial, and speaking with reference to his ruling on the motion to suppress, the trial judge said, ". . . I would have found, if I had to, that there was consent to his search of the car." The trial judge did not make a specific explanation concerning the consent issue at the time he found defendant guilty, but his attention had just been called to defendant's own initial testimony that the officer should " '[l]ook in the car and see, I ain't got nothing on me no how' . . ." Then, in ruling against the motion for new trial, the trial judge remarked that very often suspects will consent to a search even when they know contraband is present which might be found, not as a "submission to authority" but as a "submission to their ego, they think they can get away with it." Also, consent by defendant to the search of the car, despite knowledge of the presence of heroin in the car where it might be discovered even after an attempt to hide it, considering defendant's apparent sophistication in narcotic activities, could have been deliberate as supportive of a later claim that he had no knowledge of the presence of the contraband in the car, an argument which he is now making. (See *infra.*) The trial judge then said, "I would hold . . . there was a reliable informant on which to base probable cause . . . and . . . on the issue of consent there was sufficient probable cause . . . ." It is clear that by the latter part of this statement, the trial judge meant that the officer's testimony and the defendant's ambivalent version provided a sufficient basis for him to hold that defendant had given consent to the search. This indicates that there was an implied finding of consent by the trial court when it found defendant guilty.

care of. The trial judge found defendant guilty of both possession of heroin and transportation of heroin. He sentenced defendant on each count to the state prison for the term prescribed by law. The possession and transportation in the instant case clearly were the same act. Under the circumstances, the possession of the heroin was a lesser, but necessarily included, offense of the transportation of a narcotic. The evidence was sufficient to establish commission of the offense of transportation of a narcotic. Under these circumstances, defendant should only have been convicted of the transportation count (II). (*People* v. *Moran,* 1 Cal.3d 755, 763 [83 Cal. Rptr. 411, 463 P.2d 763]; *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501]; compare *People* v. *Quinn,* 61 Cal.2d 551, 556 [39 Cal.Rptr. 393, 393 P.2d 705] [suggests main concern is with sentencing, but does not appear to rule out the procedure suggested in *Tideman, infra*] with *People* v. *Tideman,* 57 Cal.2d 574, 585-586 [21 Cal.Rptr. 207, 370 P.2d 1007] [indicates propriety of full reversal to preclude possibility of dual judgments working disadvantage in term fixing].)

The judgment is affirmed as to count II. It is reversed as to count I. The purported appeal from the order denying motion for new trial is dismissed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1970.