[Civ. No. 37337.  Second Dist., Div. Two.  Feb. 10, 1971.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LEROY JOHNSON, Real Party in Interest.

## Counsel

Evelle J. Younger, District Attorney, Harry Wood and Arnold T. Guminski, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, James L. McCormick, Malcolm MacMillan and Leighton A. Nugent, Deputy Public Defenders, for Real Party in Interest.

## Opinion

**ALARCON, J.**[*]—The People seek a writ of mandate to require the respondent Superior Court of Los Angeles County to vacate its order of September 11, 1970, granting the motion of the real party in interest (hereinafter referred to as defendant) to suppress a watch seized at the time of booking.

### Factual Background

Only one witness testified at the evidentiary hearing pursuant to section 1538.5, subdivision (i). The evidence relevant to the problem we must resolve may be summarized as follows:

Richard Hodges, a police officer in the City of Signal Hill, was on duty in a marked police vehicle and in uniform at approximately 4 a.m. At about that time he received a radio call dispatching him to 2350 Lewis Avenue to apprehend "a prowler there now." He proceeded to that location and within a "matter of moments" after hearing the first radio call he received a second call relating to a prowler "there now" in the 2600 block of Lewis Avenue. This location was about three blocks from 2350 Lewis Avenue. He proceeded immediately toward Burnett Avenue.

When Officer Hodges reached the corner of Burnett and Lewis he saw the defendant coming out of a dark area between Lewis and California at Burnett. The area from which the defendant emerged was between a "residential home" of four units and a "plastics company." Between the residential and business buildings there is "a dirt passageway or—almost an alleyway between the two that goes all the way down the block behind the residences that face Lewis." This location was four or five houses away from the location reported in the second prowler call. When first observed

---

[*]Assigned by the Chairman of the Judicial Council.

the defendant was just coming around the corner of the building "about five or six feet away from the street." He was in slacks that appeared to be light in color and a dark jacket or sweater. The defendant had nothing in his hands. The business concern was not open for business at the time and the officer did not remember at the hearing whether there were any lights on in the four-unit dwelling. When the officer first saw the defendant he turned and faced in the direction of the police vehicle and appeared to notice the officer. He started running for a distance of "probably 50 to 75 yards," proceeding west toward California Avenue and then south on California. After turning south on California the defendant started walking and was stopped by the officer on a bridge at California, just south of Burnett.

The officer made a cursory search for weapons but did not find any. He asked the defendant for identification and was given an Arizona driver's license in the name of Leroy Johnson with an Arizona address and his picture. The defendant said, "I'm not prowling, I'm just lost." He was the first person to use the word "prowler." The officer asked the defendant if he had been in the area very long. The defendant stated that he had only been in the area for about two weeks. The officer then asked for clarification, if he had been in this particular immediate area and what he was doing there.[1] The defendant replied that he had been at a party. The officer asked "who was at the party or if he could direct him to some people that could tell the officer he was with them at this party," and the defendant said that "he didn't know where the party was and that he didn't know who was at the party." The officer then asked the defendant where he lived, in relation to the area. The defendant said that "he lived, I believe it was the 1400 block of Lime, which is some distance away, and he was on foot."

During the course of the conversation, "it came out that he had been in trouble in Arizona for burglary" and "that he had just gotten out of jail in Long Beach for prowling . . . a few weeks prior." The officer did not ask the defendant if he had been in the area the previous morning or whether the defendant had perpetrated any burglaries that might have occurred at any time in that area.

The officer placed the defendant under arrest "for investigation of

---

[1]The defendant does not contend before us that the defendant's statements cannot be considered in determining if there was reasonable cause for the arrest and search. Counsel for the defendant failed to object or to move to strike the testimony of the officer concerning his conversation with the defendant. Under such circumstances a defendant cannot seek appellate review of possible error concerning the admissibility of his statements under the *Miranda* rule (see *People* v. *Castro*, 257 Cal.App.2d 643, 645-646 [65 Cal.Rptr. 62]; see also, *People* v. *Atkins*, 10 Cal.App.3d 1042, 1048-1050 [89 Cal.Rptr. 588]).

burglary." The defendant was transported to the police station. In the course of booking a watch was removed by the defendant and placed in a drawer. This watch was introduced into evidence at the preliminary hearing.

There were early morning burglaries in the area prior to the detention of the defendant. The officer believed that the last cat burglary in the area occurred on the previous day in the early morning hours. The officer did not have a specific burglary in mind when he placed the defendant under arrest.

### Problem

The petitioner contends that the evidence was sufficient to establish reasonable cause for an arrest and search without a warrant. In granting the defendant's motion to suppress the watch the trial court stated as follows: "The Motion is granted. I don't think the officer had a right to arrest him. He certainly had a right, and duty, to question him because it was a suspicious situation.

"If there had been a felony committed anywhere around that area anywhere around that time, then the arrest might have been in order, but in view of the fact that the closest felony was a burglary the day before, there is no connection between finding him there then and connecting him with that burglary.

"For that reason, the Motion is granted."

We construe the foregoing language as indicating that the trial court saw the problem before it as purely a matter of law and not on the basis of the credibility of Officer Hodges or any dispute as to the facts.

It is the defendant's contention before us that while a temporary detention may have been proper under these facts, the arrest and search violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

### Discussion

■ An arrest and search of a person are reasonable when the evidence supports a finding that probable cause existed for the arrest and that the search was incident to the arrest (*People* v. *Lara,* 67 Cal.2d 365, 373-374 [62 Cal.Rptr. 586, 432 P.2d 202]; *Cunha* v. *Superior Court,* 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]; *People* v. *McGrew,* 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1]).

■ The question of reasonable cause to make an arrest and search without a warrant must be tested by the facts which were known to the

officers at the time of the search (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]). If they point to specific articulable facts and circumstances which would lead a man of ordinary care and prudence to believe, or entertain a strong suspicion, that the person arrested is guilty of a felony (*Henry* v. *Mississippi,* 379 U.S. 443 [13 L.Ed.2d 408, 85 S.Ct. 564]; *Cunha* v. *Superior Court, supra,* 2 Cal.3d 352, 356) an incidental search is reasonable although the officer may be mistaken as to the exact crime shown by the facts (see *People* v. *Kelley,* 3 Cal.App.3d 146, 151 [83 Cal.Rptr. 287]; *People* v. *Walker,* 273 Cal.App.2d 720, 725 [78 Cal.Rptr. 439]).

In the matter before us the officer advised the defendant he was being arrested for "investigation of burglary." ■ An arrest cannot be made merely for the investigation of crime. To be lawful an arrest by a peace officer must be made pursuant to an arrest warrant setting forth the commission of a specific crime (Pen. Code, § 814) or without a warrant: "1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. 2. When a person arrested has committed a felony, although not in his presence. 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." (Pen. Code, § 836.)

■ "When the police do not know whether a crime has been committed and do not have probable cause to arrest a suspect on a specific charge it is self-evident they do not possess valid authority to take a suspect into custody." (*People* v. *Manis,* 268 Cal.App.2d 653, 667 [74 Cal.Rptr. 423].)

■ Thus, in the instant matter the search of the defendant cannot be justified as an incident to an "arrest for investigation." ■ However the test for determining whether reasonable cause exists for an arrest is objective and not dependent upon the arresting officer's subjective good faith or the accuracy of his knowledge of the ephemeral law of arrest, search and seizure. ■ The decision as to whether the facts and circumstances known to the officer at the time he made the arrest were sufficient to lead a man of ordinary care and prudence to believe and conscientiously to entertain a strong suspicion that the law was being violated or had been violated must be made independently by the judicial branch of the government regardless of the characterization or label attributed to the defendant's conduct by the arresting officer (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; see also, *People* v. *Ingle,* 53 Cal.2d 407, 413-414 [2 Cal.Rptr. 14, 348 P.2d 577]). ■ Our task is to determine if under these facts there was reasonable cause to arrest the defendant for any

crime. If there was we can disregard the fact that the defendant was told he was being arrested for investigation of burglary.

██ We have concluded that in view of what the officer saw and knew there was reasonable cause for the arrest for one of several possible criminal offenses.

The facts known to the officer prior to the arrest can be summarized as follows:

1. A radio dispatch, at 4 a.m., through official channels that a prowler was "there now" at 2350 Lewis Street.

2. A second radio call through official channels that in a matter of moments a prowler was "there now" three blocks away in the 2600 block of the same street.

3. Observation of the defendant between a residential building and a business building "five or six feet from the street."

4. Observation of the defendant running "probably 50 to 75 yards" after he appeared to have observed a uniformed police officer in a marked police vehicle.

5. The statement of the defendant before any accusation was made that he was not a prowler.

6. The fact that the defendant's driver's license showed he was an Arizona resident.

7. The inability of the defendant to supply any verifiable facts as to where he had been immediately before he was encountered or why he was between two buildings at 4 a.m., some distance from his home.

8. The statement of the defendant that he had been released from jail a few weeks before for prowling.

9. A statement by the defendant that he had been "in trouble in Arizona for burglary."

10. Knowledge by the officer that a "cat burglary" had occurred in that area in the early morning hours of the previous day.

██ While some of the facts when taken alone would not constitute reasonable cause for an arrest, a reviewing court may look to the "total atmosphere" of the case in determining the reasonableness of a search (*People* v. *Ingle, supra,* 53 Cal.2d 407, 412). Nor is the fact that some of the information acted upon by the officer may not be admissible on the issue of guilt (e.g., because of the hearsay rule) controlling. ██ Reason-

able cause to justify an arrest "is not limited to evidence that would be admissible at the trial on the issue of guilt. (*Brinegar* v. *United States,* 338 U.S. 160, 171-176 [93 L.Ed. 1879, 1888-1891, 69 S.Ct. 1302].)" (*People* v. *Boyles, supra,* 45 Cal.2d 652, 656.)

■ As pointed out above under California law a peace officer may make an arrest without a warrant whenever he has reasonable cause to believe a public offense has been committed in his presence. (Pen. Code, § 836, subd. 1.) Under these facts Officer Hodges had reasonable cause to believe that the defendant was committing a violation of Penal Code, section 647, subdivision (g), in his presence. Penal Code, section 647, subdivision (g), provides that every person "Who loiters, prowls or wanders upon the private property of another, in the nighttime, without visible or lawful business with the owner or occupant thereof" is guilty of disorderly conduct, a misdemeanor. Officer Hodges observed the defendant on or in the act of leaving private property at 4 a.m. It was reasonable for the officer to infer from the flight of the defendant upon seeing a uniformed policeman that he had no visible or lawful business on the private premises he had just left. Before making an arrest and search the officer learned from the defendant that he had no visible or lawful business on the premises. These facts when considered with the radio report of a prowler "there now" not only justified an arrest and search but a failure to do so would have been a neglect of official duty. An arrest for burglary or attempted burglary was also proper under these facts. Penal Code, section 836 authorizes an arrest without a warrant whenever a peace officer has reasonable cause to believe a felony has been committed whether or not a felony has in fact been committed. Under these facts it was reasonable for the officer to believe and conscientiously to entertain a strong suspicion that the defendant had gone beyond the stage of mere preparation to commit such a crime.
■ Reasonable cause for an arrest need not be established by proof beyond a reasonable doubt. If reasonable cause exists, the fact that no crime was committed or the arrested person was subsequently found not guilty of the specific charge for which he was arrested does not affect the legality of the arrest and search (*People* v. *Burgess,* 170 Cal.App.2d 36, 41 [338 P.2d 524]).

Under these facts, the unusual hour and the immediate flight of the defendant, it was reasonable for the officer to believe that the defendant was on the private property of another with the intention of committing a burglary. In *Peters* v. *New York,* 392 U.S. 40, 48 [20 L.Ed.2d 917, 926, 927, 88 S.Ct. 1889], the United States Supreme Court had a similar problem before it. In *Peters* the defendant was arrested based on the following facts and circumstances. "Officer Samuel Lasky of the New York City

Police Department testified at the hearing on the motion that he was at home in his apartment in Mount Vernon, New York, at about 1 p.m. on July 10, 1964. He had just finished taking a shower and was drying himself when he heard a noise at his door. His attempt to investigate was interrupted by a telephone call, but when he returned and looked through the peephole into the hall, Officer Lasky saw 'two men tiptoeing out of the alcove toward the stairway.' He immediately called the police, put on some civilian clothes and armed himself with his service revolver. Returning to the peephole, he saw 'a tall man tiptoeing away from the alcove and followed by this shorter man, Mr. Peters, toward the stairway.' Officer Lasky testified that he had lived in the 120-unit building for 12 years and that he did not recognize either of the men as tenants. Believing that he had happened upon the two men in the course of an attempted burglary, Officer Lasky opened his door, entered the hallway and slammed the door loudly behind him. This precipitated a flight down the stairs on the part of the two men, and Officer Lasky gave chase. His apartment was located on the sixth floor, and he apprehended Peters between the fourth and fifth floors. Grabbing Peters by the collar, he continued down another flight in unsuccessful pursuit of the other man. Peters explained his presence in the building to Officer Lasky by saying that he was visiting a girl friend. However, he declined to reveal the girl friend's name, on the ground that she was a married woman. Officer Lasky patted Peters down for weapons, and discovered a hard object in his pocket. He stated at the hearing that the object did not feel like a gun, but that it might have been a knife. He removed the object from Peters' pocket. It was an opaque plastic envelope, containing burglar's tools."

The court held that the arrest was proper in the following language: "As the trial court explicitly recognized, deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." (392 U.S. at pp. 66-67 [20 L.Ed.2d at p. 937].)

In the matter before us the defendant was observed fleeing from private property at 4 a.m. by a peace officer acting upon official information that a prowler was "there now," and that a burglary had occurred in the same vicinity at about the same hour on the previous day. In addition he was told by the defendant that he had been "in trouble" for burglary and had just got out of jail for prowling. ■ While it is true that the mere fact a person has a criminal record does not in itself provide reasonable cause for an arrest (*People* v. *Sanders,* 46 Cal.2d 247, 251 [294 P.2d 10]) it would be unreasonable to hold that such information cannot be

considered as strong corroboration of the independent observations of the officer which indicated that the crimes of prowling and burglary had been committed or attempted. We are satisfied that the facts and circumstances known to the officer required that he arrest and search the defendant.

Let a peremptory writ of mandate issue directing the trial court to vacate its order granting the motion to suppress the watch seized from the defendant and to enter a new order denying the motion to suppress.

Fleming, Acting P. J., and Compton, J., concurred.