[Civ. No. 38493. Second Dist., Div. Five. Oct. 15, 1971.]

JOHN WAYNE AGAR, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, Damon R. Swank and David A. Sanders, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, Jr., District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**STEPHENS, Acting P. J.**—Petitioner seeks a writ of mandate after denial of his motion under Penal Code section 1538.5 to suppress evidence (a marijuana cigarette) found by the police in an alleged illegal booking search which they conducted after petitioner's arrest for reckless driving, and petitions this court to compel the trial court to exclude this evidence in the prosecution of the charge against him (unlawful possession of marijuana, a violation of Health & Saf. Code, § 11530).

On January 16, 1971, Los Angeles County Deputy Sheriff Munoz and his partner were driving on routine patrol westbound on Telegraph Road, approaching Norwalk Boulevard. At approximately 12:52 a.m., Munoz heard loud racing of engines and observed two vehicles traveling eastbound on Telegraph at what seemed to be a high rate of speed, in what appeared to be a speed contest of some sort. Munoz and his partner then turned their patrol car around so that they were then driving eastbound on Telegraph Road. The officers then clocked the vehicles at approximately 55 miles per hour in a 45 miles per hour zone, and Munoz observed the vehicles changing lanes quite rapidly. The two vehicles were a red Ford Fairlane and a red Chevrolet. The Chevrolet was following extremely close to the Ford, allowing for an unsafe distance between the two cars. The officers pulled the patrol car behind the Chevrolet and activated a spotlight and red lights in an attempt to stop the vehicle. The interior of the Chevrolet was illuminated by the spotlight. Just as it was pulling over to the right shoulder of the road, Munoz observed an arm clothed in a blue Pendleton shirtsleeve extend from the right passenger window and throw an object out the window. After observing this action, Sheriff Munoz alighted from the patrol car and immediately retrieved the object, which was a "cellophane bag— a plastic bag—containing a green leafy substance resembling marijuana" (hereinafter referred to as the baggie). Munoz "removed" the passenger from the right front seat of the Chevrolet and placed him under arrest for

possession of marijuana. The passenger was wearing a blue Pendleton shirt. Petitioner, the driver of the car, had stepped from the car and was given a pat-down search for weapons by Officer Munoz' partner; the result of the search was negative. There was no suggestion that a sobriety test might have been warranted, and a search of the automobile failed to produce any contraband. Petitioner was then "placed under arrest for reckless driving [by Officer Munoz' partner and] was transported to Norwalk Station and booked [for] reckless driving." At the time of his arrest, petitioner was wearing "a dark brown jacket." During the police procedure of booking petitioner, the police "obtained one handrolled cigarette containing a green leafy substance resembling marijuana from [petitioner's] right front jacket pocket."

On January 18, 1971, the complaint was filed charging petitioner with unlawful possession of marijuana on or about January 16, 1971. On February 3, 1971, a preliminary hearing was held. In that hearing, petitioner stipulated that both the substance contained in the baggie and the substance in the cigarette were marijuana. In the hearing, the court ruled that only the marijuana cigarette, and not the baggie, would be received in evidence in petitioner's case. On February 16, 1971, an information was filed charging petitioner with the unlawful possession of marijuana on or about January 16, 1971. Petitioner pleaded not guilty, and his motion to suppress the cigarette from evidence, contending that the cigarette was the product of an illegal search (Pen. Code, § 1538.5), was heard and denied. This petition followed.

The record shows that "[petitioner] was placed under arrest for reckless driving," and was "transported to Norwalk Station and booked" on the charge of "reckless driving"; also, that "during the booking procedure [the police] obtained one handrolled cigarette containing a green leafy substance resembling marijuana from [petitioner's] right front pocket."

█ Petitioner contends that the police did not have probable cause to arrest him for reckless driving. While it appears to us from the record that probable cause to arrest for reckless driving existed, it is unnecessary here to consider that contention since even though the arrest for reckless driving was based upon probable cause, the subsequent booking-search was illegal.

Vehicle Code section 40303 provides that when an officer makes a stop for reckless driving, the officer is given the option of either issuing the offender a "10 days' notice to appear" (a citation), or of taking the offender "without unnecessary delay before a magistrate. . . ." If the arresting officer elects to take the offender before a magistrate, then "[t]he person taken

before a magistrate shall thereupon be released from custody upon his own recognizance or upon such bail as the magistrate may fix." (Veh. Code, § 40306.) If the magistrate is unavailable, the arresting officer may take the offender before "[t]he clerk of the magistrate who shall admit him to bail," or before "[t]he officer in charge of the most accessible county or city jail or other place of detention within the county who shall admit him to bail . ; . or may, in lieu of bail, release the person on his written promise to appear. . . ." (Veh. Code, § 40307.) As stated in *People* v. *Mercurio,* 10 Cal.App.3d 426, 431 [88 Cal.Rptr. 750], "Neither by direct statement nor by inference does [Veh. Code, § 40306] provide for a booking prior to appearance before the magistrate." It is clear, then, that even with a lawful arrest of petitioner for reckless driving, the "sole right to take [him] into custody was for the purpose of taking the accused before a magistrate, or other officer authorized to admit him to bail, there is no right to conduct a body search." (*People* v. *Superior Court,* 14 Cal.App.3d 935, 945 [92 Cal.Rptr. 545].) The "failure of the officers to take [petitioner] before a magistrate . . . deprived the subsequent jailhouse search of validity." (*People* v. *Mercurio, supra,* at p. 432; see also *Carpio* v. *Superior Court* (1971) 19 Cal.App.3d 790 [97 Cal.Rptr. 186]; *People* v. *Superior Court,* 14 Cal.App.3d 935 [92 Cal.Rptr. 545]; *Morel* v. *Superior Court,* 10 Cal.App.3d 913 [89 Cal.Rptr.297].) No evidence was introduced to suggest that defendant could not have made bail and would have had to have been jailed.

In opposition to the petition, the People seem to make either one, or both, of the following contentions: first, the right to book existed because there would have been probable cause to support an arrest for possession of the baggie had such an arrest been made; second, notwithstanding the fact that petitioner was told he was being arrested for reckless driving, and notwithstanding the fact that petitioner was booked for reckless driving, petitioner was actually arrested and booked for possession of the baggie.

The People's first contention may be answered by focusing attention upon a fundamental prerequisite which the People seem to overlook: Probable cause, in the context of a warrantless arrest, has no other purpose than to impose legal limits upon the types of suspicions upon which the law will allow a valid arrest to be predicated. Therefore, *unless* it is first established that the police officer *believed* that the crime of possession of marijuana had been committed by the petitioner, the issue of probable cause does not arise, for it would be a logical absurdity for the courts to be asked to determine the reasonableness of an officer's belief that that particular crime had been committed unless it were first established that the

officer did entertain such a belief.[1] ▮ To express it in a somewhat different manner, a policeman may arrest without an arrest warrant whenever he has probable cause *to believe* that the person to be arrested has committed a public offense in his presence. (Pen. Code, § 836.) Juridically, probable cause is a legal yardstick that is used to measure reasonableness of belief; probable cause sets legal minimums on the quantity and quality of belief that will support a lawful arrest.

There is no question but that *probable cause* is measured by an objective standard and not by a subjective standard. Like any good yardstick, its length should not vary, and that length is established by an objective standard. Not so the *belief* of the policeman, however, for this is personal to him, and must be established by a subjective standard. Therefore, it must first be established that the policeman *did* entertain a belief that a particular crime had been committed. If it is established that he did entertain such a belief, it is the function of the courts to take the measure of that belief to determine its reasonableness, and in taking this measurement, the courts are unconcerned with the policeman's subjective opinion as to whether his belief had met the standard of probable cause. This is not a new concept. This court, in *People* v. *Clark,* 2 Cal.App.3d 510, 519 [82 Cal.Rptr. 682], and *People* v. *Richardson,* 6 Cal.App.3d 70, 76 [85 Cal. Rptr. 607], and the federal courts, in *Klingler* v. *United States,* 409 F.2d 299, 304, and *United States* v. *Harflinger,* 436 F.2d 928, 933, clearly recognize the principle which we have herein set forth, but in those cases,

---

[1]The logical progression of the elements of a warrantless arrest is this: first, the person arresting must believe that the accused has committed an offense; second, the belief must be reasonable; third, the reasonablenesss of the belief must conform to the standard imposed by the legal yardstick known as probable cause. In the typical case in which the court must decide the question of probable cause, there has been an arrest for a particular offense and the court need only determine, from the facts known by the officer, that the officer's belief was reasonable. Where the officer reasonably concluded that an offense had been committed and he arrested for that offense, it is immaterial that the description, by title or code designation, was erroneously stated. It is the fact of the belief which gives rise to the issue of probable cause, and the reasonableness is not in issue until that belief has been established.

Penal Code sections 836 and 837 are typical of the legislative recognition supportive of the above proposition: "A peace officer may make an arrest . . . [w]henever *he* has reasonable cause *to believe* that the person to be arrested has committed a public offense in his presence" or "[w]henever *he* has reasonable cause *to believe* that the person to be arrested has committed a felony, . . ." (Pen. Code, § 836; italics added.) "A private person may arrest another . . . [w]hen a felony has been in fact committed, and *he* has reasonable cause *for believing* the person arrested to have committed it." (Pen. Code, § 837; italics added. See also *People* v. *Aldapa,* 17 Cal.App.3d 184, 188 [94 Cal.Rptr. 579].) The verb "believe," of course, has shades of meaning— from "to have a firm conviction," to "to suppose [or] suspect." (Webster's Third New Internat. Dict. (1961).) In the context under consideration, judicially the verb has been given the meaning "to entertain a strong suspicion." (Witkin, Cal. Criminal Procedure (1963) Proceedings Before Trial, § 103, pp. 102-103.)

the issue revolved around the measurement of the *probable cause*. The fact of the *belief* of the policeman that the act had been committed was established beyond question.[2] The reasoning of the California Supreme Court lends direct support to our analysis. In *People* v. *Gallegos,* 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174], the court held that notwithstanding the fact that police could have searched a defendant's premises had they known that defendant was a parolee, since "the record [did] not disclose and no claim [was] made that he was detained as a possbile parole violator or that his premises were searched for that reason," the search was unlawful. ■ Here, it is clear that this court is not called upon to decide the reasonableness of a belief on the part of the officer that petitioner was a co-possessor of the baggie, because the record is devoid of even the slightest suggestion that the officer entertained such a belief. The record discloses that petitioner had been arrested for "reckless driving" (not for possession of the baggie), and that petitioner had been booked for "reckless driving" (not for possession of the baggie). Even the most tortuous interpretation of the facts before us fails to establish that the arresting officer ever *suspicioned* that petitioner had been in either personal or joint possession of the baggie. Since there is *no* evidence that the officer envisioned that petitioner possessed the baggie, it becomes illogical for us to analyze whether such a contemplation would have been reasonable had it been entertained; since there is no evidence that the officer ever contemplated (or if he did, formed a belief) that petitioner possessed the baggie, the officer lacked lawful grounds to arrest for possession of the baggie, and, absent a lawful arrest, the subsequent booking procedure and search were illegal.

In their second contention, the People seem to suggest that although petitioner was expressly arrested and booked for reckless driving, petitioner was actually arrested and booked for possession of the baggie, and they argue that "a mere mistake by an officer in stating the legal basis or theory for an arrest is not sufficient to make an arrest illegal." In the context of the specific facts prevailing in the authorities cited by the People in support of

---

[2]*People* v. *Clark, supra*: Policeman-*believed* that suspects had stolen a car. We held that there was probable cause to detain for further investigation.

*People* v. *Richardson, supra*: Policeman *believed* suspect illegally possessed heroin. We held that the policeman's belief as to whether he had probable cause to arrest was not determinative of whether he actually had probable cause to arrest.

*Klingler* v. *United States, supra*: Policeman *believed* that suspect had committed an armed robbery. Held: that policeman's belief that he did not have "enough facts" to arrest the suspect was not determinative as to whether probable cause actually existed.

*United States* v. *Harflinger, supra:* Policeman *believed* suspects had been trespassing upon private property. Held: that there was reasonable suspicion to detain for further investigation.

this proposition, we concur: i.e., when an accused would have been more properly charged with being *drunk in public*, rather than with *drunk driving*, "the arrest is not invalidated by the fact that the officer told' defendant he was being arrested for *drunk driving . . .* since there were grounds to arrest for two different, though *related*, misdemeanors. *The officer's announcement of the wrong offense did not make the arrest unlawful*" (*People* v. *Kelley*, 3 Cal.App.3d 146, 151 [83 Cal.Rptr. 287]; italics added); when an accused would have been more properly charged with *disturbing the peace*, rather than with *participation in obscene conduct*, "the arresting officer is not required *to cite the right code section* in order to validate an arrest for an offense committed in the officer's presence" (*People* v. *Colbert*, 6 Cal.App.3d 79, 84 [85 Cal.Rptr. 617]; italics added); and, when an accused would have been more properly charged with *possession* of illegal drugs, rather than with the *use* of illegal drugs, "where the officer believed that defendant had simultaneously committed two closely *related offenses*, one a felony and one a misdemeanor, *the fact that the officer mentioned the wrong one in his testimony* should not invalidate the arrest" (*People* v. *Woods*, 239 Cal.App.2d 697, 702 [49 Cal.Rptr. 266]; italics added). However, each of these cases assumes that the arresting officer had in mind the conduct as to which both charges related. If the People rely upon these cases to support the proposition that petitioner was actually arrested and booked for possession of the baggie when the arresting officer had informed petitioner that he was being arrested for reckless driving and booked him for reckless driving—and the record is devoid of evidence to establish that the police had in mind the baggie circumstance, showing, rather, that the arresting officer had in mind only the driving conduct of petitioner—, then the People attribute a meaning to these cases which they do not espouse. In each case cited by the People and in each of the cases which our own research has disclosed, the reason given by the officer for the arrest-and-booking is intimately related to the subsequent charge for which the accused was prosecuted.[3] Here, if we were being asked to uphold a charge of "speed

---

[3]Cases such as *People* v. *Superior Court*, 15 Cal.App.3d 146 [92 Cal.Rptr. 916] and *People* v. *Carnesi*, 16 Cal.App.3d 863 [94 Cal.Rptr. 555] must be read in the light of the facts therein involved. In each instance the officer believed that an offense had been committed (and he was reasonable in that belief). His articulation of the offense failed in preciseness, but the articulated offense (or denomination of the offense) patently established that the proper arrest was of an offense intimately concerned with the facts for which the arrest was made. In *People* v. *Superior Court* (at p. 152), after first pointing out that knowledge of the law of arrest and search and seizure is "ephemeral," the court states that "[t]he decision as to whether the facts and circumstances known to the officer at the time he made the arrest were sufficient to lead a man of ordinary care and prudence to believe and conscientiously to entertain a strong suspicion that the law was being violated or had been violated must be

contest," we might agree, but under no interpretation of the facts before us could it be said that an arrest (and wrongful booking) for reckless driving is related to an arrest (and legal booking) for illegal possession of marijuana.

Accordingly, we conclude that there was no valid arrest of petitioner for possession of the baggie, and that, absent an arrest and booking for possession of the baggie, the booking-procedure search was unlawful and the fruits of that search must be excluded from a subsequent prosecution of petitioner for the charge of possessing the contraband cigarette which was discovered in that unlawful search.

Let a peremptory writ of mandate issue directing the superior court to suppress the evidence (the contraband cigarette) admitted over the objection of petitioner.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied November 9, 1971, and the petition of the real party in interest for a hearing by the Supreme Court was denied December 9, 1971.

---

made independently by the judicial branch of the government regardless of *the characterization or label attributed to defendant's conduct by the arresting officer.*" (Italics added.) The courts, very properly, do not void a proper arrest where there has been but a procedural mistake. Likewise, the courts have not approved the making out of whole cloth an arrest for an offense never contemplated (or if contemplated, rejected) by the officer; to do so would violate the fundamental precept that the arresting officer must have "probable cause to believe that an offense has been committed."