Opinion
HOLMES, P. J.
Deputy Sheriff Figueroa was extensively trained in the symptoms of heroin use and recognition of paraphernalia associated therewith. While assigned to the narcotics bureau of the sheriff’s office, he received a telephone call from an anonymous informant stating that a person named “Dino” and another male and female driving a 1962 Chevrolet had just stolen some material from a market, that these people used and were in possession of narcotics, and that the stolen goods were being stored at 1316 Colgrove, Montebello.
Figueroa immediately went to the Montebello address, with other narcotics officers, where Figueroa saw a female in the driver’s seat of a 1964 Chevrolet hand a shopping bag that appeared to contain some object to the defendant, who entered the premises at 1316 Colgrove. The female drove off. Figueroa tried to follow and apprehend her, but failed, and returned to the Colgrove premises. He and the other officers went to the front entrance. The door was wide open, but a screen door was closed. Figueroa leaned up to the screen and saw, in the room beyond, the defendant leaning over a coffee table on which there was “a portion of cotton, a small piece o.f rubber balloon and a cylindrical piece of plastic material.” Figueroa also saw “track” marks on defendant’s arms. Figueroa testified that “from his experience as a narcotics officer, he formed the opinion that the balloon piece may have been part of a container commonly used to contain heroin, that the cotton might have been used to distill the heroin and that the plastic material may have *Supp. 9 been part of a syringe.” Figueroa formed the opinion that these items were narcotics paraphernalia. He testified that “based upon these observations and his past experience” he “believed, though he could not be certain, that there was a strong probability that there was narcotics activity occurring inside.” Figueroa then knocked and announced “sheriff’s narcotics officers.” Again he knocked and gave the same announcement. The “defendant slowly began to rise from his former position and began to turn toward the doorway.” Figueroa knocked again, made the same announcement and entered the residence. He testified that “his sole purpose in entering was to further investigate possible narcotic activity and to examine the objects more closely to see if in fact they were narcotic paraphernalia and contraband.” He testified that “at the time he entered the location he did not intend to effect an arrest”; that “he did not believe he had probable cause to justify an arrest”; and that “his only purpose in entering was to effect a further investigation.” He testified, further, that when he entered “he could not say for certain that the above-described items were contraband, but he believed them to so be.”
After entry, Figueroa went to the coffee table, “briefly looked at the above-described items, then grabbed defendant, briefly examined him, then pulled him over to a window where he was examined more closely,” determined to be under the influence of heroin, was arrested and charged with using and being under the influence of heroin. The items on the coffee table were seized. Defendant’s motion to suppress evidence was denied. Defendant appeals pursuant to Penal Code section 1538.5 subdivision (j).
There was no evidence that the officers entered the premises with defendant’s consent. It w'as stipulated that the officers had no search or arrest warrant. There was no evidence that the officers believed that the suspected items would be secreted or destroyed if entry was postponed pending obtaining of a search warrant, or that there was any “hot pursuit.”
With exceptions not pertinent to this case, a peace officer has authority to enter a private residence without a warrant or consent of the resident only for the purpose of making a lawful arrest. (Vale v. Louisiana (1970) 399 U.S. 30 [26 L.Ed.2d 409, 413-414, 90 S.Ct. 1969].) In order to make a lawful arrest without a warrant, the officer must have probable cause to arrest—i.e., he must know facts that would lead a person of ordinary prudence to entertain a strong suspicion that the *Supp. 10 person arrested is guilty of the crime for which he is arrested. (Cunha v. Superior Court (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]; People v. Haven (1963) 59 Cal.2d 713, 719-720 [31 Cal.Rptr. 47, 381 P.2d 927].) The arresting officer must also entertain a belief, at the time an arrest is made, not only that the person arrested has committed a public offense (Pen. Code, § 836), but also that a particular crime has been committed (Agar v. Superior Court (1971) 21 Cal.App.3d 24, 29 [98 Cal.Rptr. 148]; People v. Bush (1974) 37 Cal.App.3d 952, 955 [112 Cal.Rptr. 770].)
In the instant case, the officer expressly disavowed any belief, at time of entering defendant’s residence, that an arrest could lawfully be made of defendant or anyone in the residence. He testified that his sole purpose of entering was “to effect a further investigation” regarding objects that he believed to be contraband and the condition of defendant’s arms. Consequently, the officer had no probable cause to make an arrest. The entry was illegal and the evidence obtained thereby should have been suppressed.
We find nothing in People v. Superior Court (Johnson) (1971) 15 Cal.App.3d 146, 152 [92 Cal.Rptr. 916], or in the cases there cited to indicate a contrary conclusion. Respondent’s reliance on Agar v. Superior Court (1971) 21 Cal.App.3d 24, 29 [98 Cal.Rptr. 148] is misplaced. It is true that the court there said that the arresting officer’s opinion of whether his belief that he has probable cause to arrest meets the judicial standard of probable cause is immaterial. That proposition is not in issue here. The necessity of reversal in the instant case is generated by the fact that the arresting officer had no belief that a crime had been or was being committed by anyone in the residence and, therefore, lacked an essential basis of probable cause for arresting anyone therein.
The order denying the motion to suppress evidence is reversed.
Marshall, J., and Alarcon, J., concurred.