[Crim. No. 21608. Second Dist., Div. Four. Jan. 26, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
J. H. HOWELL, Defendant and Appellant.

**COUNSEL**

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders and Gaye W. Herrington, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FILES, P. J.**—After a court trial, defendant was convicted of possession of heroin (Health & Saf. Code, § 11500). He is appealing from the judgment. We are called upon to decide whether the arrest of an intoxicated motorist was unlawful because the arresting officer could not determine the cause of the intoxication and cited an inapplicable code section as the justification for the arrest. We have concluded that, under the circumstances shown here, the arrest and the search of defendant's person incidental to the arrest were lawful, but the judgment must be reversed because defendant's agreement to submit the issue of guilt on the preliminary transcript

was not accompanied by the form of waiver which is required by the recent decision in *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452].

## The Arrest

At about 6 p.m. on August 22, 1971, Officer Abbey was engaged in investigation of an automobile accident which had occurred a few minutes earlier. The officer had not seen the accident, but witnesses pointed out defendant as the driver of one of the vehicles involved. After conversing with defendant and observing his condition, Officer Abbey arrested defendant and took him to the police station, where he was searched. A package of heroin was thus discovered on his person.

At defendant's preliminary examination his objection to the introduction of the heroin was overruled. In the superior court he moved under Penal Code section 995 to set aside the information, arguing that the evidence of guilt was the product of an illegal arrest and search. This motion was denied. Defendant then moved to suppress the heroin under Penal Code section 1538.5. A hearing was held, at which the preliminary transcript was, by stipulation, received in evidence. Defendant's witnesses at the hearing on the motion included himself, Officer Abbey, who had testified at the preliminary hearing and who was called for further examination, and four other persons. The motion to suppress was denied.

Defendant then agreed to submit the issue of his guilt upon the preliminary transcript, with the understanding that he would be found guilty of the offense of possession (Health & Saf. Code, § 11500) rather than the alternatively charged offense of possession for sale (Health & Saf. Code, § 11500.5).

The evidence which supports the trial court's finding as to the legality of the arrest is in the testimony of Officer Abbey. His testimony in the superior court differed in some details from what he said at the preliminary examination, but his superior court testimony added nothing of substance.

Officer Abbey testified that when he asked defendant for a driver's license, defendant stated he had left it at home. Asked for other identification, defendant produced a credit card in the name of Joseph P. Hickey, signed by "Mrs. Nikka B. Hickey." When asked for a registration slip on the car he produced, instead, a "pink slip" made out in the name of another person, but he was unable to tell the officer what that person's name was. When defendant was asked by the officer if there was someone he could call to verify his identity, defendant said there was no one "we could call at that time."

Officer Abbey observed that defendant was unsteady on his feet, weaving, having trouble maintaining his balance, his speech was slurred, he stammered and repeated and had trouble enunciating, his eyes were bloodshot, watery and glassy, and the pupils were constricted. There was no odor of alcohol.

The grounds of arrest, as stated by Officer Abbey at the preliminary examination, were "For the culmination of driving under the influence, no identification. . . . I believe I informed him that I felt he was loaded, and he has no indication, no identification, and I don't believe that he was Joseph Hickey. . . . Like I said, under the influence, no identification, and also the possibility that the credit card might be a stolen credit card. . . ."

He testified that at the time of the arrest he had intended to book defendant under Vehicle Code section 23106.[1]

Testifying in the superior court, Officer Abbey stated the reasons for the arrest in these words: "Driving under the influence, no identification, the possibility of possessing a credit card other than his own, possibly a stolen credit card. Also no registration on the vehicle, no proof of ownership."

Officer Abbey was questioned extensively concerning his belief as to the cause of defendant's intoxication. A fair summary of his answers is that he could not say what caused it. He said he considered it could be alcohol, an opiate, a barbiturate or an amphetamine. He had had training and experience in the field of narcotics investigation, and he had been arresting persons under the influence of all kinds of drugs over a period of five years. At the scene of the accident, Officer Abbey asked defendant if he used heroin. Defendant replied "that he had not shot heroin for quite a while." They "had quite a discussion about his background in narcotics."

Abbey also testified that, although he did not detect the odor of alcohol, "there is always a possibility." At the police station he asked defendant if he would like to take a breathalyzer test. The record does not show that such a test was given.

Officer Abbey testified that defendant's slightly constricted eyes were

[1]Vehicle Code section 23106, as it read at the time of the offense, provided: "It is unlawful for any person under the influence of any drug, other than a narcotic or amphetamine or any derivative thereof, to a degree which renders him incapable of safely driving a vehicle, to drive a vehicle upon any highway. Any person convicted under this section is guilty of a misdemeanor and shall be punished by imprisonment in the county jail not to exceed one year or by a fine of not to exceed five hundred dollars ($500) or both."

"bordering on the symptoms of opiate intoxication." He said he considered heroin intoxication to be a possibility but "I do not make the opinion that someone is under the influence of an opiate unless . . . I have got the objective symptoms that I have been trained in right down the line."

Explaining why he selected Vehicle Code section 23106 as his ground of arrest, the officer said: "It's a section that, in my knowledge, is for all other drugs. In the absence of alcohol, if I can't pinpoint what particular drug it is, then, my opinion is that, if it is not an opiate, it falls under 23106."

In analyzing the legality of the search, we put aside the officer's belief that defendant may have been guilty of theft, and defendant's failure to produce identification. (See *People* v. *Superior Court (Simon)* (1972) 7 Cal. 3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) Neither do we consider the possibility that defendant might have been arrested under Penal Code section 647, subdivision (f), since a violation of that section involves other elements not shown in the record here. It does not appear in this record that either the arresting officer or the trial court believed that the elements of a violation of section 647, subdivision (f), were present.

In attacking the validity of the arrest, defendant's attorney points out that a violation of Vehicle Code section 23106 is a misdemeanor, that the offense was not committed in Officer Abbey's presence, and the general rule is that an arrest for a misdemeanor is lawful only when the officer has reasonable cause to believe it occurred in his presence. (See Pen. Code, § 836.)

An exception to the general rule is found in Vehicle Code section 40300.5, enacted in 1969, which provides: "Notwithstanding any other provision of law a peace officer may, without a warrant, arrest a person involved in a traffic accident when the officer has reasonable cause to believe that such person had been driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug." The ground of arrest referred to in Vehicle Code section 40300.5 corresponds to the offense defined in Vehicle Code section 23102, i.e., driving under the influence of liquor or the combined influence of "liquor and any drug."[2] Read literally, section 40300.5 does not cover

---

[2]Vehicle Code section 23102, subdivision (a): "It is unlawful for any person who is under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon any highway."

In *People* v. *Ashley* (1971) 17 Cal.App.3d 1122 [95 Cal.Rptr. 509], Vehicle Code section 40300.5 was held applicable also to an arrest under Penal Code section 367d (now subd. (a) of § 367d).

driving under the influence of certain drugs without liquor, which could be a violation of section 23106.

■ The trial court, in ruling on defendant's motion to dismiss under Penal Code section 995, and again in denying defendant's motion to suppress under section 1538.5, expressed the opinion that the search was valid under *People* v. *Wilken* (1971) 20 Cal.App.3d 872 [97 Cal.Rptr. 925]. The *Wilken* case involved a search incident to an arrest of a motorist for a violation of Vehicle Code section 23102. The rulings here indicate a finding by the trial court that the officer had reasonable cause to believe that defendant had been driving under the influence of intoxicating liquor or under the combined influence of liquor and any drug. This finding, if supported by the evidence in the record, supports the decision.[3]

■ Reasonable cause is defined in *People* v. *Fischer* (1957) 49 Cal.2d 442, 446 [317 P.2d 967]: "Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] Probable cause may exist even though there may be some room for doubt. [Citations.] The court and not the officer must make the determination whether the officer's belief is based upon reasonable cause. [Citations.] The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial."

■ A measure of uncertainty on the part of the officer as to which offense has been committed does not necessarily preclude a lawful arrest. In *People* v. *Kilvington* (1894) 104 Cal. 86 [37 P. 799], the Supreme Court reversed the manslaughter conviction of an officer who had killed a fleeing citizen. In explaining its decision that probable cause to arrest existed as a matter of law in that case, the court said, at pages 92-93: "It is true the deceased was not charged in terms with the commission of a felony, but this was not necessary in order to justify the defendant in entertaining a reasonable suspicion that he was guilty of a felony. It was night; the deceased was fleeing, pursued by a person who was shouting 'stop thief!' This was in effect a charge that the deceased had committed a theft of some kind, and the defendant had just as much reason to suspect or believe

---

[3]An alternative ground of arrest could have been violation of Vehicle Code section 23105 which had been amended by an emergency measure effective July 21, 1971 (Stats. 1971, ch. 363, § 4, p. 730) to read as follows: "23105. (a) It is unlawful for any person who is under the influence of narcotic drugs or amphetamine or any derivative thereof to drive a vehicle upon any highway.

"(c) Any person convicted under this section is guilty of a felony. . . .'"

that the deceased may have committed robbery, or burglary, or grand larceny, as to suppose that his pursuer only meant by the cry of 'stop thief!' to charge him with petit larceny. The defendant was called upon to act promptly, and, as the language used by the witness Howard was broad enough in its popular sense to import a charge of felony, the defendant was justified in attempting to arrest the deceased."

■ In the case at bench Officer Abbey had reasonable cause to believe defendant had been driving a motor vehicle while under the influence of one or more of four kinds of intoxicants. Although he had had considerable training and experience in this field, he was unable to identify any one intoxicant to the exclusion of others. We think his testimony supports the finding of the trial court that the officer's belief included a "strong suspicion" that defendant was under the influence of an intoxicating liquor, or the combined influence of liquor and a drug. Although the ingestion of intoxicating liquor is commonly associated with the odor of alcohol on the breath, there is nothing in the record or in our general knowledge to compel a holding that as a matter of law failure to smell alcohol precludes a reasonable suspicion of a violation of section 23102.

We do not think the legality of the arrest is destroyed by the officer's intention, as reflected in his testimony, to book defendant for the misdemeanor violation of section 23106. The facts known to the arresting officer were consistent with possible violation of any of three Vehicle Code sections, depending upon what had caused the defendant's intoxication: 23102 applied to liquor alone or in combination with any drug; 23105 applied to amphetamines and narcotics; 23106 applied to any drug other than an amphetamine or narcotic. As the record here demonstrates, an experienced officer may not be able to determine in the field which intoxicant is the cause of a subject's condition.

The record also shows Officer Abbey was unclear as to the scope of section 23106. He testified he thought it applied to any intoxication other than involving alcohol or an opiate, apparently being unaware that a person under the influence of an amphetamine would come under section 23105.

■ In cases where an officer had in mind facts which justified an arrest, and made an arrest upon those facts, the arrests have been held lawful despite the officer's having cited some other closely related offense at the time of arrest or in testifying. (See *People* v. *Colbert* (1970) 6 Cal.App.3d 79, 84 [85 Cal.Rptr. 617]; *People* v. *Kelley* (1969) 3 Cal.App.3d 146, 151 [83 Cal.Rptr. 287]; *People* v. *Walker* (1969) 273 Cal.App.2d 720, 725

[78 Cal.Rptr. 439]; *People* v. *Woods* (1966) 239 Cal.App.2d 697, 702 [49 Cal.Rptr. 266].)[4]

We find no conflict between this principle and the rule that an arresting officer must have a subjective belief that a particular crime had been committed. (See *People* v. *Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People* v. *Superior Court (Simon), supra,* 7 Cal.3d at p. 198; *Agar* v. *Superior Court* (1971) 21 Cal.App.3d 24, 28 [98 Cal.Rptr. 148].) The *Agar* opinion (at p. 30) expressly distinguishes the line of cases where the officer merely cited the wrong code section. The two Supreme Court decisions (*Miller* and *Simon, supra*) cite *Agar* with approval, and do not express disapproval of the cases which *Agar* distinguishes. We conclude that on the facts here presented, the rule applied in *Colbert, Kelley, Walker* and *Woods* is the applicable law. (See also *People* v. *Farley* (1971) 20 Cal.App.3d 1032, 1037 [98 Cal.Rptr. 89].)

■ Since the trial court found, upon substantial evidence, that Officer Abbey had reasonable cause to arrest defendant for a violation of Vehicle Code section 23102, the search of the defendant's person to find evidence of the offense was a lawful incident of the arrest. (See *People* v. *Superior Court (Simon), supra,* 7 Cal.3d at p. 202, fn. 12.) ■ It was not unlawful to postpone that search until defendant had been taken to the police station. (*People* v. *Gomez* (1972) 26 Cal.App.3d 928 [103 Cal.Rptr. 453].)

■ Defendant also contends that the trial court erred, in the course of the hearing on the motion to suppress "in failing to consider the opinion of lay witnesses as to whether defendant was under the influence of a drug." The argument is based upon a comment by the trial court, taken out of context.

During the hearing on defendant's motion to suppress the heroin, defendant's trial attorney asked Officer Abbey some questions on the general subject of how he could distinguish defendant's condition from the symptoms of shock. There was an objection, followed by a colloquy in the course of which the court stated that "lay witnesses' opinions as to shock or being under the influence of a dangerous drug is [*sic*] absolutely inadmissible. . . ." The court went on to explain that any layman's testimony as to objective symptoms observed would be received.

It does not appear from this record that any admissible evidence was excluded. We cannot read the trial court's remark as reflecting any state of mind which would have operated to the prejudice of defendant in the court's weighing of the evidence.

---

[4]Disapproved on an unrelated point in *People* v. *Doherty* (1967) 67 Cal.2d 9, 15 [59 Cal.Rptr. 857, 429 P.2d 177].

### The Agreement to Submit

After the trial court had overruled defendant's motion to suppress the heroin which he had been carrying, defendant and his attorney agreed to submit the issue of guilt upon the transcript of the preliminary examination. The record shows that defendant personally waived his right to a jury trial, and his right to a trial in which the witness against him would be required to appear and be examined and cross-examined in the courtroom in defendant's presence.

On the subject of self-incrimination, the record shows this: "MR. SOSICH [deputy district attorney]: Now, there has been a discussion by your attorney, Mr. Mirano, and the Deputy District Attorney, James Johnsen, of the District Attorney's office of the County of Los Angeles with his Honor, Judge Munnell, in chambers; and based on that discussion, it was agreed by all if the case were submitted on the transcript of the preliminary hearing and no further evidence were offered by either side, that you would be found guilty of possession of heroin in violation of Section 11500 of the Health and Safety Code, a felony."

Defendant responded that he understood and agreed. Defendant also agreed that the truth of the allegations in the information as to prior felony convictions would be determined by the court, without a jury, at the time of sentence.[5] The possible sentences were explained.

Before accepting the stipulation the trial court inquired of defendant's attorney whether he was satisfied, on the basis of his discussions and conferences with defendant, that the latter had an intelligent understanding of the rights he was waiving. Counsel responded "yes."

■ The record is clear enough that defendant understood what he was doing and that his consent was voluntary. The fatal defect is that the defendant was not expressly told, on the record, that he had a right against compulsory self-incrimination and he did not say that he waived that right. In *People* v. *Levey, supra,* 8 Cal.3d 648 at page 654, the Supreme Court declared that this exact form of waiver is indispensable.

In the case at bench, the waiver was not sought in that abstract form. Instead the trial court obtained a waiver specifically directed to the incriminatory effect of what defendant was actually agreeing to. The waiver in this form is a safeguard against the kind of misunderstanding which was the subject of discussion in *Brookhart* v. *Janis* (1966) 384 U.S. 1 [16

---

[5]At the time of sentence the court stated that "out of leniency and the hope for rehabilitation" it would not make a finding with respect to the priors.

L.Ed.2d 314, 86 S.Ct. 1245], and *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473]. In each of those cases the problem was not defendant's ignorance of an abstract principle of constitutional law, it was his lack of understanding that his stipulation would inevitably result in a finding of guilt. When the Supreme Court stated in *Mosley* (at p. 926, fn. 10) that the record must show a waiver of the right to freedom from self-incrimination, many judges and lawyers believed that this requirement could best be met by a waiver directed specifically to the problem discussed in that case—that is, defendant should express his understanding of the extent to which his stipulation would incriminate him.

This misconception has been put to rest by the recent decision in *People* v. *Levey, supra,* 8 Cal.3d 648. The language of the admonition and waiver in that case differed from what we have here, but the *Levey* opinion does not permit us to distinguish the case on that ground. In *Levey,* the defendant was told, and agreed, that "the judge, in all likelihood, will find you guilty as charged." That language could have been criticized upon the ground that it might have suggested to the defendant that he still had a possibility of an acquittal. But the opinion of the Supreme Court places no emphasis on the words "in all likelihood" in the admonition. Instead, the *Levey* opinion emphasizes that a submission on the transcript, when "tantamount to a plea of guilty" (i.e., where a finding of guilty is expected), must contain the same forms of express waivers as when a defendant pleads guilty.

The judgment is reversed.

**DUNN, J.**—I concur in that part of the opinion upholding the search and seizure. I also concur in the reversal, but only under compulsion of *People* v. *Levey,* with whose application to a case such as this I disagree. (Rule 976(b), Cal. Rules of Court.) It seems to me that to require a specific waiver of self-incrimination in this case is to impose a meaningless burden upon the trial judge.

Appellant did not testify at the preliminary hearing, the transcript of which he stipulated was to determine his guilt or innocence. Accordingly, he cannot be held there to have incriminated himself. The testimony of others incriminated him, it is true, but "incrimination" and the "self-incrimination" forbade by the United States Constitution, Fifth Amendment (". . . nor shall [he] be compelled in any criminal case to be a witness against himself, . . ."), are different terms, representing different things.

The constitutional right is a privilege that "protects an accused only from being compelled to testify against himself, or otherwise provide the

State with evidence of a testimonial or communicative nature, . . ." (*Schmerber* v. *California* (1966) 384 U.S. 757, 761 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826]. And see: *Gilbert* v. *California* (1967) 388 U.S. 263, 266-267 [18 L.Ed.2d 1178, 1182-1183, 87 S.Ct. 1951].) While, contrary to statements appearing in earlier California cases (cf. *People* v. *Haeussler* (1953) 41 Cal.2d 252, 257 [260 P.2d 8]; *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 770 [312 P.2d 690]), it appears that the rule against self-incrimination is not limited to statements "coming from a 'person's own lips' " (*Schmerber* v. *California, supra,* 384 U.S. at pp. 774-775 [16 L.Ed. 2d at p. 922]—dissent of Black and Douglas), nevertheless, its further extension is only to defendant's evidence of a "communicative" nature. I cannot understand how an agreement to submit a finding of guilt or innocence upon a transcript of testimony given by other people may be considered as such evidence. Nor, for that matter, how the Fifth Amendment is involved at all. (See *Schmerber* v. *California, supra,* 384 U.S. at p. 772 [16 L.Ed.2d at p. 921]—dissent of Harlan and Stewart; and see fn. 4 in *People* v. *Sanchez* (1972) 24 Cal.App.3d 664 [101 Cal.Rptr. 193] cited and distinguished, but not disapproved, in *People* v. *Levey,* fn. 4.)

Submission upon the transcript may here be tantamount to a plea of guilty but it does not "furnish a link in the chain of evidence needed for conviction." (*People* v. *Levey, supra,* 8 Cal.3d at p. 652.) The submission was pursuant to an understanding that defendant would be found guilty of the lesser of the two offenses charged. In the limited sense of that understanding, only, was it "tantamount to a plea of guilty," since defendant preserved the opportunity for appellate review of his contention that evidence had been unlawfully obtained. (Pen. Code, § 1538.5, subd. (m).)

The record shows that defendant not only waived his right to a jury trial, but, additionally, waived his right to a trial in which the witnesses against him would be required to appear for examination and cross-examination in defendant's presence. Having thus waived his right (Sixth Amendment) ". . . to be confronted with the witnesses against him; . . .," I am unable to understand why he should be required additionally to waive his right against self-incrimination.

**KINGSLEY, J.**—I concur in the reversal, since I can see no basis for distinguishing *People* v. *Levey.* (As a Justice of an intermediate appellate court, it is not within my official competence to express an opinion as to the merits of that opinion; I am obligated to follow it.)

However, I dissent from the portion of the opinion which sustains the admissibility of the evidence.

I can find in the record before us no more than that Officer Abbey was convinced that defendant was "under the influence" of some kind or kinds of intoxicant, but that he had no reason to suspect one kind more than another, except that he put alcoholic intoxication as a remote possibility. While I agree that the cases do not require an arresting officer to be a good lawyer, and that he may err in what particular crime is involved, I read them as requiring him to have a reasonable belief in *facts* which, if true, would justify an arrest. I cannot subscribe to a holding that a felony arrest may lawfully be made merely on an officer's belief that the arrestee has committed some crime of indefinite content. I realize that the problem in the case at bench arises out of the fact that the various code sections are so drawn as to be mutually exclusive; but the rectification of that difficulty is for the Legislature, not for us.

I concur in what is said as to the other contentions raised by defendant.