[Crim. No. 34369. Second Dist., Div. One. Aug. 22, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DALE LEWIS, Defendant and Appellant.

[Crim. No. 37388. Second Dist., Div. One. Aug. 22, 1980.]

In re MICHAEL DALE LEWIS on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Michael S. Luros, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Carol Slater Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NEWMAN (J. M.), J.*—Michael Dale Lewis, aka William Taylor, appeals from a judgment of conviction of the crimes of burglary (Pen. Code, § 459) and grand theft (auto) (Pen. Code, § 487, subd. 3) and

*Assigned by the Chairperson of the Judicial Council.

concurrently petitions for a writ of habeas corpus seeking reversal of the judgment on the ground that he was denied the effective assistance of counsel in his trial.

FACTS
*Penal Code Section 1538.5 Motion*

After arriving at Los Angeles International Airport on the morning of June 21, 1977, Earle Martin rented a red 1977 Mercury Monarch about which he observed no visible damage on the driver's side. Martin ultimately drove to Hollywood and checked into the Imperial 400 Motel. He was assigned room 208, and then went out for dinner. Upon his return, he parked his rental car in the motel parking lot downstairs from room 208. He locked the door after entering his room, did some work, and went to sleep at approximately 2 a.m. Martin was not disturbed during the night, and awoke at about 5:05 a.m., as is his custom. He saw that his clothes, draped over a chair when he returned, were strewn about the room. His briefcase, wallet, keys, and approximately $100 in cash were gone. Martin later found his room key, which had been in his pants pocket, in his shoe. He looked outside his room and observed that the red Mercury Monarch was missing. There were no signs of forced entry. Martin called the room clerk, reported the burglary and theft, and requested that the police be contacted. The police came to the motel. Martin gave no one permission to enter his room or drive his rental car.

The scene now shifts to the Hollywood Hills Motel in the early morning hours of June 27, 1977. At approximately 1:30 a.m., the manager of that motel, Ping Lee, rented room 19 to Carlos Bueno or Brenos.[1] Bueno appeared to be intoxicated, and Mr. Lee had to fill out the registration card for him. He indicated he would be alone in the room. While checking the premises of the motel at about 6 a.m. that same morning Lee noticed several louvres had been removed from the bathroom window of room 19, which were there when the room was rented to Mr. Bueno. He went to and looked through the window and saw a man lying on the bed whom he did not recognize, since this man seemed larger than Mr. Bueno. Mr. Lee first knocked on the door of room 19 to awaken Mr. Bueno. Receiving no response, he went to the motel office and attempted to awaken Mr. Bueno by telephone. For the next three hours, Mr. Lee maintained his observation of room 19 and contin-

---

[1]He is referred to by both these names in the record.

ually telephoned the room. At last, Mr. Bueno answered the room phone, and in response to Mr. Lee's inquiry said there was someone whom he had not invited in his room. Mr. Bueno indicated his assent when Mr. Lee told him he would summon the police. Mr. Bueno then objected to remaining in the room and was given a new room by Mr. Lee at no additional charge.

Officers Anderson and Jones responded to a radio call indicating that a burglary suspect was then present at the Hollywood Hills Motel. They arrived at approximately 10:30 a.m., and were met by Ping Lee who told them that a man who had not registered was sleeping in a room rented to someone else; that he wanted this man removed. The officers went up to the room, looked through the opening in the bathroom window, but were unable to see anything. The door was tried and found locked; a passkey was obtained from Ping Lee and the officers unlocked the door and entered the room. The officers saw appellant sleeping on top of the bed face down and fully clothed. The officers awakened appellant, patted him down for weapons, asked him how he got into and what he was doing in the room, and requested identification. He replied that he was invited into the room by another man to drink and fell asleep. Based upon Ping Lee's statements and his observations, Officer Anderson formed the opinion that appellant was too big to have entered through the bathroom window opening and might therefore have used a passkey, which was not uncommon in motel burglaries in the Hollywood area. He felt that appellant had entered the room to commit a felony[2] and arrested him for burglary, a violation of Penal Code section 459. Anderson then searched appellant, hoping to find a key to room 19. In appellant's jacket pocket, he found one key ring which contained eight or nine keys, with numbers stamped on each key in the manner of a motel or hotel key. He also found automobile keys, one set for a Ford product and some for a General Motors brand. Officer Anderson asked appellant about the function of the various keys; appellant responded that he had purchased a car that broke down on Washington Boulevard; that he left it there and walked to the motel—the General Motors key fit this car. He knew nothing about the various keys stamped with numbers. Officer Anderson then asked Ping Lee whether there were any cars in the motel parking lot which he did not recognize. Lee identified a Mercury Monarch as being unfamiliar to him. Officer Anderson walked over to the Mercury, inserted the Ford key in the door, unlocked it, inserted the key in the ignition and turned it on. A record check of the status of the Mercury indicated it was reported stolen.

[2]Which he stated was "burglary," an obvious tautology.

## DEFENSE

The manager, Ping Lee, did not ask that appellant be arrested; he merely wanted him removed from the room. He was asked by an officer he identified as Anderson whether he wanted appellant arrested and replied that he did not. Lee further testified that when he told the officer that he did not want appellant arrested, the officer then told appellant that at least he had to pay Ping Lee for the room, and appellant gave $7 of the money he had to the officer who in turn gave it to Lee. Lee thought this transaction occurred after the officers entered the Mercury Monarch. In rebuttal, Officer Anderson testified he was not present during this conversation. The motion to suppress was denied.

### Evidence Code Section 402 Hearing

The case proceeded to trial on July 21, 1978. Officer Anderson did not testify; his partner, Officer Jones, was present and did testify. Before commencement of the jury trial, a hearing pursuant to Evidence Code section 402 was held to determine the admissibility of statements by appellant to Officer Jones. Defense counsel stipulated to the validity of the arrest of appellant for purposes of the hearing, but reiterated her assertion of an invalid arrest as raised at the earlier Penal Code section 1538.5 hearing. At this hearing, prior to testifying about the circumstances surrounding the statement by appellant, Officer Jones testified that appellant had been detained but not arrested at the point when he found keys on appellant's person and then asked him if any of the cars parked in the motel lot belonged to him, and was told they did not. Officer Jones further testified that the keys he found on appellant fit the 1977 Mercury Monarch in the lot, which the manager did not recognize as belonging to a guest, and started it. Officer Jones then inquired over his police radio as to the status of the car and was informed it was listed as stolen. Appellant was then arrested for grand theft auto, advised of his *Miranda* rights, waived them, and gave his statement to Officer Jones.

### TRIAL

In the course of the trial, Officer Jones testified that he made a cursory search for weapons while making initial inquiries of appellant and thereafter recovered keys from his jacket pocket while searching his person. After finding keys to a Ford product, Officer Jones asked appel-

lant whether he was driving, and appellant replied he was not. A rental agreement found in the glove compartment of the Monarch bore the signature of Earle Martin.

When appellant was brought from room 19, he was neither handcuffed nor otherwise physically restrained by the officers. After Officer Jones learned that the Mercury was reported stolen, appellant was arrested for grand theft auto.

Appellant was transported to the police station, where Sergeant Miller interviewed and took a statement from him after advising him and receiving a waiver of his rights. Appellant earlier had told Officer Jones that a man he was gambling with gave him $100 to return the Monarch to the rental agency because it had been damaged. He fell asleep before he could do so; he lost most of the money gambling. Appellant told Sergeant Miller that he met a man named Early (*sic*) Martin who offered him $100 to return a rental car which had been damaged. Appellant took the money but did not return the car because his fingerprints were all over the steering wheel, door handle and rearview mirror. Appellant described Martin as a black man.

On July 14, 1977, Sergeant Miller went to the Imperial 400 Motel with the keys found on appellant's person to determine if any fit room 208. The manager identified the keys with stamped numbers as belonging to the motel. Each of the numbered keys recovered from appellant including that with number 208 unlocked the corresponding room door of the motel. The manager also stated he had often seen appellant in the vicinity of the motel.

Defense counsel did not renew her motion to suppress evidence or object to introduction of the keys as evidence in the trial. Defendant was convicted of the charges indicated, and sentenced to state prison for the term prescribed by law under the indeterminate sentence law in effect when the offenses were committed.

ISSUES

Appellant makes two contentions: (1) that he was arrested without probable cause; therefore evidence found on his person and all of its fruits, including his statements, should be suppressed; and in the alternative (2) that at the time he was searched, he was not arrested, only

detained, and therefore that the search of his person was impermissibly excessive in scope requiring the suppression of evidence found in that search and its fruits. Flowing from this latter contention is his most substantial: if, because his suppression motion was not renewed at trial on the ground evidence supporting it was newly discovered, or because his counsel did not object at trial to the introduction of the evidence found on his person, these claims may not be advanced on appeal, he was denied effective counsel. If counsel was ineffective, his conviction should be reversed. If it cannot be on these facts, then his contemporaneous petition for writ of habeas corpus should be granted on this same ground of ineffective counsel, and his conviction should be reversed.

## DISCUSSION

Appellant has both appealed and filed his contemporaneous petition for writ of habeas corpus. This course of action is recommended as appropriate in circumstances where the record contains no explanation for the challenged aspect of representation, resulting in affirmance on appeal, unless there could be no satisfactory explanation for counsel's acts or omissions. A habeas corpus proceeding, on the other hand, provides an opportunity for an evidentiary hearing in which trial counsel may describe reasons for the challenged acts or omissions. (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].)

Since appellant has raised the same issues in both his appeal and habeas corpus petition, we shall treat them together.

### I

Appellant did test the legality of the arrest and the search in which the keys were found in the Penal Code section 1538.5 suppression motion. It was heard on January 10, 1978 (before a judge other than the one who presided at the trial), and decided adversely to the defendant after a full evidentiary hearing. The standard for review is clear:

■ "A proceeding . . . to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. [Citations.] The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if

supported by substantial evidence. [Citations.]" (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

Officer Anderson testified that, based on the information received from Ping Lee and the discovery of appellant in a room he had not rented, without identification, and with an unsatisfactory explanation of how he happened to be there, he arrested appellant for burglary and the search in which the keys were found followed.

■ Appellant's claim that the evidence elicited at this hearing was not such as to provide probable cause to arrest is without merit. ■ There is probable cause to arrest when the facts known to the arresting officer would lead a person of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that an individual is guilty of a crime. (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) ■ The standard of probable cause to arrest is the probability of criminal activity, not a prima facie showing. (*People* v. *Moore* (1970) 13 Cal.App.3d 424, 436 [91 Cal.Rptr. 538].) ■ Officers Anderson and Jones had probable cause to believe that a crime had been committed—an unregistered person was sleeping in one of the rooms, from the bathroom window of which the louvres had been removed; he had no identification and an unsatisfactory explanation for being there. The prior occupant to whom the room had been rented requested another room. This constitutes substantial evidence to support the finding of the trial court.

We observe, however, that because appellant appeared to the officers too large to have entered room 19 through the bathroom window, a question exists as to his means of entry, and since no evidence of theft or attempted theft from Carlos Bueno, or disturbance of the room appears in the record, a question arises as to the crime appellant intended to or did commit. Penal Code section 459 defines burglary as entering "any...room...with intent to commit grand or petit larceny or any felony...." It is apparent that probable cause to arrest appellant existed. The facts adverted to above are such as to permit an officer to reasonably entertain the suspicion that appellant intended either to take property belonging to the room's occupant or to obtain the benefit due to a hotel guest without paying for it—use of the room. Penal Code section 537 provides that any person who obtains accommodations at a [motel] without paying therefor, with intent to defraud the proprietor

or manager of the establishment, is guilty of a misdemeanor. ▆ Thus, even if Officer Anderson did not have probable cause to arrest defendant for burglary, he did for this latter offense. "The fact the officer did not formally place appellant under arrest for that offense did not invalidate the arrest or require exclusion of the evidence seized incident to the arrest [citations]. The fact an officer may place a person under arrest for the wrong offense does not invalidate the arrest and require exclusion of evidence seized incident to the arrest, if the officer nevertheless had probable cause to arrest the person for another offense (see, e.g., *People* v. *Walker* (1969) 273 Cal.App.2d 720, 725 [78 Cal.Rptr. 439]; *People* v. *Kelley* (1969) 3 Cal.App.3d 146, 151 [83 Cal.Rptr. 287]; *People* v. *Farley* (1971) 20 Cal.App.3d 1032 [98 Cal.Rptr. 89]; *People* v. *Howell* (1973) 30 Cal.App.3d 228, 235-236 [105 Cal.Rptr. 748])." (*In re Donald L.* (1978) 81 Cal.App.3d 770, 775-776 [146 Cal.Rptr. 720].)

## II

However, at the Evidence Code section 402 hearing immediately preceding the trial, Officer Jones testified that at the time the incriminatory keys were found and taken from appellant's jacket pocket, he was not under arrest but was only detained—he was ultimately arrested when Officer Jones discovered the Ford keys in appellant's possession fit the Mercury Monarch which was reported stolen. This hearing was for the purpose of determining the voluntariness of statements made by appellant to Officer Jones. There was no further examination or cross-examination in this hearing about the arrest or detention status of appellant at the time he was searched.

## III

Trial commenced and Officer Jones was asked about the keys—but neither was a question asked nor an issue raised as to whether defendant was arrested or only detained at the time of the search. Ping Lee testified that Officer Jones asked him whether he wanted appellant arrested when the officer brought him downstairs after questioning and searching him, but *before* matching the Ford key to the Mercury Monarch. Ping Lee also testified that Officer Anderson obtained $7 from appellant in payment for the room when Lee said he did not want appellant arrested.

It is this testimony upon which appellant relies for his contention that he was not arrested but only detained at the time of the initial search—which constitutes the newly discovered evidence appellant contends would have supported either a renewal of the Penal Code section 1538.5 motion to suppress, on the ground that the extent of the search was impermissibly excessive or at least an objection to introduction of the keys into evidence at the trial. Renewal of the motion or objection to the introduction of the keys in evidence would have preserved for appeal the issue of legality of the search if the motion was again denied or the objection overruled.

## IV

We note that Officer Jones' testimony differs from that of Officer Anderson at the Penal Code section 1538.5 hearing in two respects: (1) Anderson testified he arrested appellant for burglary before searching him, and that he personally took the keys from appellant and tried them successfully in the Mercury. Officer Jones testified at the Evidence Code section 402 hearing that appellant was searched while detained before being arrested—and that he found the keys and matched them with the Mercury. Clearly, the discrepancies in testimony between Officers Anderson and Jones could give rise to a question about the legality of the search when it was conducted, but does not for the reasons we shall state below.

By resolving the issue of legality of the search of appellant in favor of respondent—that is, by concluding that probable cause to arrest appellant existed at the time he was discovered in room 19, it becomes unnecessary to reach the other issues raised in this appeal and in appellant's petition for habeas corpus seeking reversal on the ground that appellant was denied effective assistance of counsel.

Defense counsel could not have rendered ineffective assistance to appellant if there was no reason for her to renew her motion to suppress or object to introduction of the keys into evidence at trial on the ground of newly discovered evidence. The discrepancies between Officer Anderson's testimony at the Penal Code section 1538.5 hearing, in which he stated that appellant was arrested before he was searched, and Officer Jones' testimony at the Evidence Code section 402 hearing, that appellant was not arrested but only detained when he was searched, would give rise to the issue of the permissible scope of a search of a detainee

(1) where probable cause to arrest does not exist at the time of the detention and search, or (2) where the discrepancies pertain to the very issue of whether probable cause to arrest exists when the arrest takes place.

But that is not this case. In the instant case there was probable cause to arrest appellant before he was searched; and the discrepancies in the two officers' testimony do not embrace this issue. This is so because even though Officer Jones characterized the defendant's status as detention rather than arrest when he was searched, he too entertained the subjective belief that an offense was committed (see *People v. Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228]), because, according to Ping Lee's trial testimony, this officer asked the motel manager whether he wanted defendant arrested *before* matching the Ford key to the Mercury Monarch.[3] The only reasonable explanation for Officer Jones making this inquiry is that he possessed the requisite subjective belief that appellant had committed an offense warranting arrest, perhaps burglary, but most probably defrauding an innkeeper. Moreover, the discrepancies do not give rise to a question of Officer Anderson's credibility in stating he believed that defendant had committed a burglary (thus raising the question of his subjective belief that this crime had been committed) because probable cause to arrest for defrauding an innkeeper was immediately apparent—that offense was committed in the officer's presence and both officers conducted themselves in a manner consonant with a subjective belief that no less than *this* offense was *then* being committed.

Thus the requirement set forth in *Agar v. Superior Court* (1971) 21 Cal.App.3d 24, 28-29 [98 Cal.Rptr. 148] and *People v. Miller, supra,* 7 Cal.3d at page 226, that it first be established that the police officer believes the crime has been committed before the issue of probable cause (the objective legal standard by which to measure the reasonableness and sufficiency of the officer's subjective beliefs) arises, is fulfilled. Characterization of appellant as being detained but not arrested is therefore of no moment because when probable cause to arrest exists, probable cause to search does as well. (*People v. Triggs* (1973) 8 Cal.3d 884, 894-895, fn. 8 [106 Cal.Rptr. 408, 506 P.2d 232].)

---

[3]At the Penal Code section 1538.5 hearing, Ping Lee similarly testified that Officer Anderson asked him if he wanted appellant arrested after he was found in and then removed from room 19.

## V

■ The issue of denial of effective assistance of counsel arises only when counsel fails to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates and when acts or omissions of counsel result in withdrawal of a potentially meritorious defense. (*People* v. *Pope, supra*, 23 Cal.3d at p. 425.) Since the search of appellant leading to discovery of the incriminating keys was lawful in any event, the claim that appellant was denied effective assistance of counsel according to the *Pope* standard does not survive analysis.

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Lillie, J., concurred.

**JEFFERSON (Bernard), Acting P. J.\*—**I dissent.

The majority holds that the two police officers had probable cause to arrest the defendant in the motel room where he was found and that the search of his person which produced various keys which led to his prosecution for burglary and grand theft was therefore a valid search. The majority thus sustains the trial court's ruling denying the suppression-of-evidence motion. The majority also rejects the defendant's claim that he was denied the effective assistance of trial counsel.

I find both of these holdings by the majority to be erroneous, untenable, and unsupportable by the record or the pertinent decisional law. The majority purports to accept and follow the well-settled standard of appellate review which is set forth in *People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585], as follows: "A proceeding . . . to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. [Citations.] The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence. [Citations.]" But the majority's holding is in effect a nullification of this appellate-review standard.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

The key error in the majority's analysis stems from its holding that the trial court's ruling is supported by substantial evidence and from its reliance upon *People* v. *Harris* (1975) 15 Cal.3d 384 [124 Cal.Rptr. 536, 540 P.2d 632] and *People* v. *Moore* (1970) 13 Cal.App.3d 424 [91 Cal.Rptr. 538], for the proposition that the officers had probable cause to arrest the defendant. Neither of these cases is apposite to the factual situation presented in the instant case.

I do not quarrel with the principle that there is probable cause to arrest a suspect when "'the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed. [Citation.]'" (*People* v. *Miller* (1972) 7 Cal.3d 219, 225 [101 Cal.Rptr. 860, 496 P.2d 1228].) But I do quarrel with the majority's view that the police officers had probable cause to arrest defendant.

I

*Defendant's Suppression-of-evidence Motion*
*Should Have Been Granted Because of an*
*Invalid Warrantless Arrest or*
*Detention and Search*

The critical issue before us is whether the evidence presented at the suppression-of-evidence hearing could justify a finding by the trial court that the officers had probable cause to arrest and, hence, to search the defendant. The majority accepts Officer Anderson's testimony at the suppression-of-evidence hearing as constituting substantial evidence to meet the definition of probable cause to make an arrest. Officer Anderson testified that the facts he used to constitute probable cause to arrest defendant for burglary consisted of the following: the officer was informed by the manager of the motel that there was a man in a motel room who did not belong there; that the defendant was fully clothed and asleep in the motel room; that defendant did not give a satisfactory explanation of how he happened to be there. From the facts, said Officer Anderson, he concluded that defendant had committed a burglary.

I am unable to accept Officer Anderson's conclusion that the defendant did *not* provide him with any satisfactory explanation for his presence there. Officer Anderson testified at the suppression-of-evidence hearing that, upon awakening defendant and asking him how

he happened to be in the motel room, he obtained from defendant the explanation that he had been invited into the room for drinks and then had simply fallen asleep. Although there was indication of tampering with the bathroom window, Officer Anderson said it was obvious that the defendant was too large a man to have gained access to the room by way of the window; that therefore defendant must have gotten into the room by the use of a motel key. The assumption which Officer Anderson made that a motel key had been used by defendant to gain entrance was based upon the officer's knowledge that obtaining a motel key and using it to gain entrance to a motel room was a common method employed by burglars to commit motel burglaries.

It is my view, however, that it is pure speculation, conjecture and hunch to consider that the existence of this method of committing a motel burglary is sufficient to negate defendant's explanation that he had been invited into the room for drinks and then fell asleep while fully clothed. There is no testimony in the record that anything was taken by defendant or that the room was disturbed in any way. It is therefore illogical, unreasonable and untenable for an officer—or for anybody else for that matter—to believe that one who uses a key to commit a burglary of a motel room, would go into a motel room and then do nothing more there but go to sleep. There is thus no basis for a finding by the trial court in this case, or for a finding by the majority, that under the circumstances presented, defendant gave an unsatisfactory explanation for his presence in the room. On the contrary, the only reasonable inference that the evidence supports is that defendant's explanation of his presence in the motel room was a true explanation.

The majority engages in further intense speculation in an effort to justify an obviously unjustifiable arrest—if indeed an arrest did take place at the time defendant was searched. The majority's theory that there was probable cause to arrest defendant for the *misdemeanor* offense of defrauding an innkeeper—committed in the presence of the officers, although the officers never dreamed that any such offense was being committed in their presence—has no more substance than the majority's theory of burglary. Thus, Mr. Lee, the manager, told the officers that a man who had not registered was sleeping in a room rented to someone else. Since the officers then knew that the motel room had been *rented* to another person, defendant's explanation of his presence in the room certainly precluded any belief by the officers that defendant was occupying the room *with intent to defraud* the proprietor.

It is simply preposterous for the majority to take the position that the officers had reasonable cause to believe that defendant was committing a misdemeanor in their presence as he lay asleep fully clothed on the bed. The observation of the *Miller* court is pertinent here and needs repeating: "Accordingly, the People cannot meet the objective criterion of probable cause for an arrest on a charge of stolen property [defrauding an innkeeper here], because they have failed initially to demonstrate, by an exposition of the officers' beliefs, that those officers suspected the defendant to be guilty of *that* crime." (*Miller, supra,* 7 Cal.3d 219, 226; fn. omitted.) (Italics added.)

It is significant that at an Evidence Code section 402 evidentiary hearing with respect to the admissibility of defendant's subsequent statements—a hearing which was held as part of the trial—Officer Jones testified to a version of the facts entirely different from the version given by Officer Anderson in his testimony at the suppression-of-evidence hearing. Officer Jones testified that defendant was *not* arrested for burglary, or at all, as of the time he was being searched, which is contrary to the testimony of Officer Anderson. Officer Jones stated in his testimony that defendant was simply being *detained* when he was being searched and that defendant was arrested *only* after automobile keys were found and removed from his person and these keys were determined to be the keys to a stolen automobile located in the parking lot.

The majority considers the substantial discrepancies between Officer Anderson's testimony at the suppression-of-evidence hearing and Officer Jones' testimony at the Evidence Code section 402 admissibility-of-evidence hearing as being of no material consequence because there existed probable cause for defendant's arrest whether he was in fact arrested or simply detained at the time of the personal search and seizure. I simply cannot understand how the majority is able to conclude that such substantial discrepancies in the testimony of the two officers do not embrace the issue of whether the officers had probable cause to arrest defendant for the felony offense of burglary. It appears to me that the discrepancies in the version of the facts regarding defendant's arrest or detention related by Officer Anderson and in the version of those facts related by Officer Jones have an inexorable bearing upon whether these police officers had probable cause to arrest the defendant for burglary. When we add Officer Jones' testimony that there was no arrest of defendant to that of Officer Anderson saying

there was an arrest, we must inevitably conclude (1) that Officer Anderson could *not* have had a *subjective* belief that defendant had committed burglary, and (2) that there were no facts known to him which would constitute an *objective* verification of the reasonableness of any subjective state of mind—assuming that he could have had any subjective belief that defendant had committed burglary.

It is clear that, in order for there to exist probable cause for a warrantless arrest, the arresting officer must not only *subjectively* entertain a belief that a felony offense has been committed by the defendant, but it must also be *objectively* reasonable for him to entertain such a belief.

This two-fold requirement of a subjective belief and an objective basis for such a subjective state of mind in determining probable cause to make a felony arrest was recently reiterated in *In re Tony C.* (1978) 21 Cal.3d 888, 893, footnote 2 [148 Cal.Rptr. 366, 582 P.2d 957], in which the high court observed: "In a trio of cases decided in 1972 this two-fold requirement of an *objective* verification of the reasonableness of a *subjective* state of mind was recognized and enforced in the context of probable cause to arrest. [Citations.]" (Italics in original.)[1]

Although the *In re Tony C.* case was not concerned with probable cause for a warrantless arrest, but with what constituted grounds to justify a detention and search short of probable cause for an arrest, nevertheless, the court set forth a principle of law which I deem applicable and pertinent to the issue of what constitutes probable cause for a warrantless felony arrest. In requiring that an investigative stop or detention be supported by a subjective suspicion on the part of an officer of criminal activity by the person stopped or detained, and an objective basis in terms of specific and articulable facts to support such a subjective suspicion, the *Tony C.* court laid down an important corollary to this rule of law. The corollary was to the effect "that an investigative

[1]In the *In re Tony C.* case, the court was dealing with the issue of what circumstances short of probable cause to make an arrest would justify a police officer in making an investigative stop and detention for questioning or other limited investigation. As part of the guiding principle set forth in the *In re Tony C.* case, the court established the same two requirements of a subjective state of mind and an objective verification of that state of mind. Thus, the *In re Tony C.* court concluded with respect to the legality of an investigative stop or detention "that in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so." (*In re Tony C., supra*, 21 Cal.3d 888, 893.)

stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C., supra*, 21 Cal.3d 888, 893.)

In like manner, I deem it a part of the definition of probable cause to make a warrantless felony or misdemeanor arrest that an arrest predicated on mere hunch, rumor or curiosity on the part of the police officer, cannot justify an arrest of a suspect even though the officer has acted in complete good faith. This is exactly what we have in the case at bench. The very best that Officer Anderson had to go on could have been a good faith belief that defendant had committed burglary, although I do not consider that the record would support a finding of such a good faith belief. But since his good faith belief, if any, is only supportable by a *hunch* based upon the officer's knowledge that some hotel and motel burglaries have been committed by suspects who got illegal possession of a key to a hotel or motel room, the arrest of defendant—if it did take place before the search—was not based on any probable cause. Hence, the search of defendant which turned up the car keys was an illegal and unconstitutional search and seizure. This made the keys obtained in the search subject to being suppressed as evidence pursuant to Penal Code section 1538.5.

The case at bench is similar in principle to *People* v. *Miller* (1972) 7 Cal.3d 219 [101 Cal.Rptr. 860, 496 P.2d 1228], in which a defendant was arrested for the offense of receiving stolen property because police officers found him sleeping in a car parked in a parking lot. The car contained electronic equipment in plain sight, but the officers had received no information that the equipment was stolen property. In holding that the arrest was invalid the court made the observation that "the People cannot meet the objective criterion of probable cause for an arrest on a charge of stolen property, because they have failed initially to demonstrate, by an exposition of the officers' beliefs that those officers suspected the defendant to be guilty of *that* crime." (*Id.* at p. 226.) (Italics added.)

Further emphasis was placed by the *Miller* court on the requirement for probable cause to justify a warrantless arrest that police officers have a belief that a defendant committed a *particular* crime. Thus, the court added: "Although the officer must suspect that an individual has committed the elements of a crime in order eventually to establish probable cause to arrest for commission of *that crime*, the officer need not

*articulate* all his suspicions at the time of arrest,..." (*Id.* at p. 226, fn. 1.) (First italics added; second italics in original.)

It is obvious in the case at bench that Officers Anderson and Jones did *not* have a good faith belief that defendant had committed a burglary. The offense of burglary requires a specific intent to commit theft or some felony. (Pen. Code, § 459.) What intent did Officer Anderson believe defendant possessed when the latter entered the motel room? Was it to commit some other felony? Officer Anderson's testimony does not supply an answer. Nor does the evidentiary hearing testimony of Officer Jones at the trial supply an answer except to refute the suppression-of-evidence-hearing testimony of Officer Anderson that defendant was in fact arrested at the time he was searched beyond the customary pat-down search for weapons.

It is equally obvious that neither Officer Anderson nor Officer Jones entertained any subjective belief that defendant had committed in their presence the misdemeanor offense of defrauding an innkeeper. The majority conjectures and speculates that Mr. Lee's trial testimony would indicate that Officer Jones *probably* had a subjective belief that there was probable cause to arrest defendant for this misdemeanor offense. But I read the record of Mr. Lee's trial testimony differently than does the majority.

The questions to Mr. Lee and his answers were as follows: "When the police arrived, you told them that you wanted the man in the other room removed; is that correct? [¶] A. Right. [¶] Q. And you didn't tell them that you wanted him arrested, but you said that you wanted him removed and you wanted money for the room? [¶] A. I didn't ask for money. [¶] Q. You told them that you wanted him removed, though, but *not* arrested; is that right? [¶] A. Right." (Italics added.)

This testimony of Lee is not reasonably capable of the inference that the officers *asked* Lee whether he wanted the defendant arrested. If Officer Jones suspected that the misdemeanor offense of defrauding an innkeeper was being committed by defendant in his presence, it would be of no consequence whether Lee wanted defendant arrested or not. Why would a police officer ask a motel proprietor whether the latter wanted a defendant arrested if the officer was observing the defendant commit an offense in the officer's presence to justify an arrest? But the most persuasive evidence against the conjectural and speculative theory

that Officer Jones probably articulated in his mind that defendant was committing the offense of obtaining service from the motel with an intent to defraud the motel by not paying for such service is the testimony of Officer Jones himself. Jones testified that they were making an investigative detention of defendant—*not* an arrest at the time of the search. If Officer Jones believed that he had probable cause to arrest defendant for the offense of defrauding an innkeeper, he would have arrested defendant rather than making a *detention only.*

It is manifestly and inescapably clear, therefore, that Officer Jones did not possess any subjective belief that defendant had committed the misdemeanor offense of defrauding an innkeeper. Hence, there was no probable cause to arrest defendant for this offense. Nor did Officer Jones, at the time of the search, believe that defendant had committed any offense which would provide probable cause to justify an arrest. Such probable cause developed only after the illegal search turned up the car keys which fit the ignition of a stolen vehicle.

If Officer Jones is to be believed, the search of defendant was a part of a detention process and *before* any arrest was made. Under such circumstances, the only search that can be justified by a prearrest detention is a pat-down search for weapons. As the California Supreme Court has pointed out, "[t]he sole justification for such a search is 'the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' (*Terry* v. *Ohio* (1968) *supra,* 392 U.S. 1, 29-30 [20 L.Ed.2d 889, 910-911.) In the ordinary *Terry*-type pat-down, occurring as it does in the context of a street frisk, an intrusion further than the outer clothing of the suspect is allowable only if the initial limited exploration discloses potential instruments of assault. (*Sibron* v. *New York* (1968) 392 U.S. 40, 44-45 [20 L.Ed.2d 917, 924-925, 88 S.Ct. 1889].) To properly exceed the scope of a pat-down the officer must be able to point to 'specific and articulable facts reasonably supporting his suspicion' that the suspect is armed. (*People* v. *Collins* (1970) 1 Cal.3d 658, 662 [83 Cal.Rptr. 179, 463 P.2d 403].) The burden of establishing these facts rests with the People. (*Ibid.,* citing *People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921].)" (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 542 [119 Cal.Rptr. 315, 531 P.2d 1099].)

Here the officers made a search of defendant for the specific purpose—not of seeking to locate a weapon—but on the *hunch* that defendant might have had motel keys in his pocket. This search, therefore, constituted a clear violation of defendant's federal and state constitutional rights to be free of an unreasonable search and seizure as explained in *Brisendine*.

Even where an officer during a pat-down search touches some object which he realizes is not a weapon, he may not seize such an object. "An officer unable to point to specific and articulable facts suggesting that the object he touches during a pat-down search is a weapon may not seize the object." (*People* v. *Leib* (1976) 16 Cal.3d 869, 876 [129 Cal.Rptr. 433, 548 P.2d 1105].) A suspicion even that a defendant is carrying contraband can form no justification for a detention search that goes beyond the pat-down search for a weapon. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1]; *People* v. *Mosher* (1969) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659]; *Leib, supra,* 16 Cal.3d 869.)

## II

*Defendant Is Not Barred From Raising on
Appeal the Issue of Invalidity of a Search
Resulting From a Detention as Contrasted
With a Search Resulting From an Arrest*

The People also advance the contention that defendant should be precluded, on this appeal, from raising the issue of the invalidity of the search as part of a mere detention of defendant in that defense counsel did not raise the issue at the suppression-of-evidence hearing or renew a motion at the trial to suppress evidence, or otherwise object to the introduction into evidence of the keys seized in making a search of defendant's person.

I fully recognize that it is a settled rule of law that, "for a suppression ruling to be reviewable, the underlying objection, contention or theory must have been urged and determined in the trial court.... [¶] This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions." (*People* v. *Manning* (1973) 33 Cal. App.3d 586, 600-601 [109 Cal.Rptr. 531].)

But my review of the record of the suppression-of-evidence hearing indicates quite clearly, however, that defendant moved to suppress evidence (including the car keys) both on the ground that the search was incident to an illegal arrest and on the ground that the search was incident to an illegal detention. Thus, defense counsel stated to the court at the beginning of the suppression-of-evidence hearing: "I indicated in my notice to counsel that what I wish to suppress were any observations made, any statements made, any evidence seized or any contraband seized as the result of the illegal *detention, arrest,* or *search* of Mr. Lewis." (Italics added.) The fact that defense counsel in argument at the conclusion of this hearing emphasized the theory of an illegal arrest for burglary cannot be unreasonably distorted to amount to a waiver of the ground initially urged of an illegal search incident to either an arrest or to a detention.

I thus disagree with the apparently narrow and strict interpretation placed upon a defendant's suppression-of-evidence motion by the *Manning* court. The *Manning* court observed: "Even if the trial court has not insisted upon a formal statement of grounds, it is apparent that the scope of issues upon review must be limited to those raised *during argument*, whether that argument has been oral or in writing." (*Manning, supra,* 33 Cal.App.3d 586, 601.) (Italics added.) A defendant's constitutional rights should not be wiped away by the specious argument of waiver advanced by the People on this appeal.

### III

*Defendant Was Denied His Constitutional*
*Right to Effective Assistance*
*of Trial Counsel*

I turn next to the issue of whether defendant was denied his constitutional right to effective assistance of counsel. This issue is raised by defendant on his appeal from the judgment of conviction as well as by a petition for a writ of habeas corpus. It is now established law that a defendant has been denied effective assistance of counsel only upon a showing "that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates," and that, in addition, "counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].)

Defendant predicates his position that he was denied the effective assistance of counsel on the theory that his trial counsel failed to renew at the trial the motion to suppress evidence after the evidentiary-admissibility hearing had revealed the testimony of Officer Jones—testimony which was contradictory of the testimony of Officer Anderson given at the hearing on the suppression-of-evidence motion—and failed to object to the introduction into evidence of the keys seized from defendant's person during the search of defendant's person.

It is significant that, on the appeal, the People point out that defendant may not claim as error the receipt into evidence of the automobile keys seized from defendant as a result of the search of defendant's person because defendant did not object to admissibility at the trial. Here, again, it is "the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal. [Citations.] The contrary rule would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' [Citation.]" (*People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048]; accord, *People* v. *Privitera* (1979) 23 Cal.3d 697, 710 [153 Cal.Rptr. 431, 591 P.2d 919].)

In this instance the record is not at all ambiguous. It demonstrates that defense counsel did not renew the suppression-of-evidence motion after Officer Jones testified at the evidentiary-admissibility hearing during the trial—a hearing held to test the admissibility of defendant's statements. Nor did defendant object to the introduction into evidence of the vehicle keys taken from defendant's person. On the contrary, the trial judge specifically asked if defense counsel was objecting to the introduction of the prosecution's exhibits—which included the vehicle keys—and counsel responded that she had no objection to the exhibits being received into evidence.

The majority rejects defendant's claim regarding ineffective assistance of counsel by making the facile explanation that the search of defendant was an integral part of a valid warrantless arrest and, therefore, that the contradictory testimony of Officer Jones could have no effect on converting an arrest into the lesser intrusion denominated a detention. Obviously, if there was probable cause to arrest defendant

for the felony offense of burglary based solely on Officer Anderson's testimony—even though it was contradicted by the subsequent testimony of Officer Jones—a renewal by defense counsel of a motion to suppress evidence based on a theory of an invalid search following a detention of defendant rather than following an arrest of defendant, and an objection to admissibility of evidence seized from defendant during the search, could not possibly succeed. Under such a hypothesis, defense counsel's failure could not result in the withdrawal of a potentially meritorious defense.

It is my view that the majority's holding in rejecting defendant's contention that he was deprived of his constitutional right to effective assistance of counsel is equally as erroneous as its holding that the officers had probable cause to arrest defendant for the felony offense of burglary. It is manifestly clear to me that the testimony of Officer Jones that defendant was searched and the car keys removed from his person before any arrest was made created a serious and glaring problem of credibility with respect to the testimony of Officer Anderson, which necessarily demonstrated a failure on the part of the People to carry its burden of proving that Officers Anderson and Jones had probable cause to arrest defendant and search him beyond the pat-down search which is the only permissible search in the case of an investigative detention.

The record before us is devoid of any evidence that a reasonably competent attorney for the defendant would have failed to renew the suppression-of-evidence motion and would have failed to object to the introduction in evidence of the objects seized during the search of defendant's person. The likelihood of such a motion being denied is without any foundation in the evidence. On the contrary, in light of the testimony of Officer Jones, the conclusion is inescapable that the trial judge would have granted such a motion on the ground that there was lacking probable cause for the officers to arrest defendant on a charge of burglary or defrauding an innkeeper and that the search and seizure of the keys from defendant's person constituted a constitutionally impermissible search and seizure as flowing from an investigative detention. (See *Leib, supra,* 16 Cal.3d 869; *Kaplan, supra,* 6 Cal.3d 150; and *Mosher, supra,* 1 Cal.3d 379.)

This is not a case in which it can be validly asserted that the record is silent as to whether the failure to renew the motion to suppress evidence

and to object to the admissibility of evidence seized from defendant was a matter of a tactical choice by defense counsel. The vehicle keys obtained in a search of defendant's person constituted a crucial element in the prosecution's case against defendant for grand theft of an automobile. This illegally seized evidence constituted a substantial part of the prosecution's case against defendant. The *Pope* case reiterated, without equivocation, that if trial counsel's failure to perform the obligations which reasonably competent counsel would have performed "results in the withdrawal of a crucial or potentially meritorious defense, '"the defendant has not had the assistance to which he is entitled."'" (*Pope, supra*, 23 Cal.3d 412, 425.) (Fn. omitted.)[2]

I would thus reverse the judgment of conviction and grant the petition for writ of habeas corpus.

Appellant's petitions for a hearing by the Supreme Court were denied October 15, 1980. Bird, C. J., was of the opinion that the petitions should be granted.

---

[2]In the omitted footnote, the *Pope* court commented: "A crucial defense is not necessarily one which, if presented, 'would result inexorably in a defendant's acquittal.' [Citations.] *Ibarra* [*People* v. *Ibarra* (1963) 60 Cal.2d 460 (34 Cal.Rptr. 863, 386 P.2d 487)] itself teaches that by failing to obtain an adjudication of the stronger of two potential defenses, trial counsel deprived his client of constitutionally adequate assistance (60 Cal.2d at pp. 465-466)." (*Pope, supra*, 23 Cal.3d 412, 425, fn. 15.)